717 S.E.2d 757

**Cheryl Ann BURCH, Appellant,**

v.

**Thomas Andrew BURCH, Respondent.**

**No. 27060.**

Supreme Court of South Carolina.

Heard Sept. 20, 2011.
Decided Oct. 31, 2011.
Rehearing Denied Dec. 1, 2011.

320

A. Camden Lewis and Ariail E. King, of Lewis & Babcock, and John D. Elliott, all of Columbia, for Appellant.

James T. McLaren and C. Dixon Lee, both of McLaren & Lee, of Columbia, for Respondent.

Chief Justice TOAL.

In this action for divorce and equitable division, Appellant Cheryl Burch (Wife) appealed (1) the family court's valuation of certain real properties at the filing date for divorce rather than the date the properties were actually sold; (2) the denial of a request for contribution from Respondent Thomas Burch (Husband) to their child's private school education; (3) the denial of reimbursement for delinquent interest payment advanced by Wife; (4) the amount of Husband's child support obligation; and (5) the assessment of attorney's fees against Wife for her delay and noncooperation. We affirm in part and reverse in part.

## FACTS/PROCEDURAL HISTORY

Wife and Husband married on October 18, 1992, and filed for divorce on January 28, 2005. One child (Son) was born of the marriage.

At the time of filing, Wife earned $10,418.16 per month while Husband estimated that he made $6,792 per month.[1] The couple sent Son to Heathwood Hall Episcopal School (Heathwood Hall), a private school in Columbia, from 5–K kindergarten through the 6th grade at a cost of $12,000 annually, split between the parties. After Wife filed for divorce, Husband refused to contribute to Son's education claiming financial hardship, heavy debts, and a desire for Son to have a "fresh start" at a public school.[2]

During the marriage, Husband worked primarily as a real estate developer. Around the time of the marriage, Husband met Robert S. Small, Jr. who owns Avtex Commercial Property, Inc. (Avtex), a real estate development company. Husband and Small agreed to share ownership with each other in deals that Husband brought to Avtex and also decided that each development project would be structured under a separate

---

1. Wife's expert alleged that Husband actually earned $8,333 per month from 2000 to 2004.

2. But shortly after Wife filed for divorce, Husband purchased a new home worth approximately 1 million dollars, a brand new Porsche costing $90,000, and a new office in the Vista area of Columbia.

limited liability company (LLC) designated Avtex Partners I, Avtex Partners II, and so forth.

This appeal concerns two of those entities, Avtex Partners VI, LLC ("Avtex VI") and Avtex Partners VI I, LLC ("Avtex VII"). Husband owned a 25% interest in Avtex VI and Avtex VII, while Small retained a 65% interest, and a third investor, Tom Fox, shared a 10% interest in the companies.

Avtex VI I's sole asset consisted of a development located in Charleston County known as the Market at Oakland (Oakland). Husband's largest contribution to the project was setting up the initial meeting between Small and the owner of the property, which led to an agreement in February 2003 to develop Oakland. Small financed 100% of the deal by taking out a personal loan, and he testified that Husband's role in the Avtex VII project was limited:

I have got to tell you I didn't want [Husband] working on it. . . . Mount Pleasant is a very difficult place to develop. And you can't have more than one voice out there. . . . The politics down there are incredible. So I asked him, you work on the others, I will work on this.

At the time of the divorce filing, Avtex VII had yet to be developed, no lease had been signed, and Husband claimed the property had zero equity value. After the divorce filing, Husband's participation in Avtex VII amounted to attending two trade shows in Charlotte, North Carolina and Las Vegas, Nevada in March and May 2005, respectively. At both shows, Husband failed to attract any lessees for the project.

In contrast, Small secured the participation of Wal–Mart to anchor Oakland for Avtex VII, and in September 2005, a lease agreement was entered into by the parties. When asked what role Husband played in the development of Avtex VI I between January 2005 and September 2005, Small stated, "I think his was more of a passive role." Around the same time, Husband and Small parted ways and Small bought Husband's interest in Avtex VII for $1,591,500.

The Avtex VI development project was a shopping center located on Forest Drive in Richland County. At the time of the divorce filing, a lease for Bonefish Grill, a restaurant chain, was already in place. After filing, Casual Living, a retail

store, signed a lease with Avtex VI.[3] Subsequently, while the divorce was pending, Small also bought Husband's interest in Avtex VI.

With respect to Avtex VI, the family court allocated $254,920.35 as non-marital assets and $194,730.82 as marital assets. The family court also awarded the marital home to Wife and directed Husband to make payments on the mortgage in the amount of $3,982.80. Husband did not tender the money in violation of the court's order. Instead, Wife advanced the payment and then sought reimbursement, which the family court denied on equitable grounds, finding Wife received a $54,279.66 windfall from refinancing the marital home.

## ISSUES

I.   Whether the family court erred in valuing Husband's interests in Avtex VI and VII at the filing date rather than at a date occurring after the separation but before the divorce was final.

II.  Whether the family court erred in declining to require Husband to contribute to the expenses of Son's private school education.

III. Whether the family court erred in denying Wife reimbursement for an interest payment advanced by her.

IV.  Whether the family court abused its discretion in awarding $1,000 per month in child support.

V.   Whether the family court properly assessed attorney's fees against Wife.

## STANDARD OF REVIEW

■ On appeal from the family court, this Court has jurisdiction to find facts in accordance with its own view of the preponderance of the evidence. *Dickert v. Dickert*, 387 S.C. 1, 6, 691 S.E.2d 448, 450 (2010) (citation omitted). This broad scope of review does not require the Court to disregard the findings of the family court. *Id.* (citation omitted).

---

**3.** The Record lacks details concerning the post-filing activities of Husband in acquiring the Casual Living lease.

ANALYSIS

## I. Valuation of Avtex VII

■ Petitioner contends the family court erred in valuing Avtex VII at the time of filing rather than at a date occurring after a separation but before final divorce. We agree.

■ In South Carolina, marital property subject to equitable distribution is generally valued at the divorce filing date. *Fuller v. Fuller,* 370 S.C. 538, 545–48, 636 S.E.2d 636, 640 (Ct.App.2006); *see also* S.C.Code Ann. § 20–3–630 (Supp.2010) (" '[M]arital Property' as used in this article means all real and personal property which has been acquired by the parties during the marriage and which is owned as of the date of filing or commencement of marital litigation"). However, the parties may be entitled to share in any appreciation or depreciation in marital assets occurring after a separation but before divorce. *McDavid v. McDavid,* 333 S.C. 490, 497 n. 7, 511 S.E.2d 365, 369 n. 7 (1999); *Fields v. Fields,* 342 S.C. 182, 186, 536 S.E.2d 684, 686 (Ct.App.2000). "[G]iven the volume of cases handled by our family courts, there often is a substantial delay between the commencement of an action and its ultimate resolution. Thus, it is not unusual for the value of marital assets to change, sometimes substantially, between the time the action was commenced and its final resolution." *Dixon v. Dixon,* 334 S.C. 222, 228, 512 S.E.2d 539, 542 (Ct.App.1999).

When determining the proper date of valuation, other states examine whether there has been "active" or "passive" appreciation or depreciation of the marital assets. *See Mayhew v. Mayhew,* 205 W.Va. 490, 519 S.E.2d 188 (W.Va.1999); *Greenwald v. Greenwald,* 164 A.D.2d 706, 565 N.Y.S.2d 494 (N.Y.A.D.1991); *In re Marriage of Wagner,* 208 Mont. 369, 679 P.2d 753 (Mont.1984); *Brackney v. Brackney,* 199 N.C.App. 375, 682 S.E.2d 401 (Ct.App.2009); *Scavone v. Scavone,* 243 N.J.Super. 134, 578 A.2d 1230 (N.J.Super.Ct.App.Div.1990); *Diamond v. Diamond,* 360 Pa.Super. 101, 519 A.2d 1012 (Pa.Super.Ct.1987). As one court explained:

"**Passive appreciation**" refers to enhancement of the value of property due solely to inflation, changing economic conditions, or market forces, or other such circumstances beyond

the control of either spouse. *O'Brien v. O'Brien,* 131 N.C.App. 411, 420, 508 S.E.2d 365 [300, 306] (1999). *See Lee's Family Law* § 12.52(b)(i) ("[P]assive forces include interest, inflation, market forces, government action, [and] *labor of third parties. . . .*"). **"Active appreciation,"** on the other hand, refers to "financial or managerial contributions" of one of the spouses. *O'Brien,* 131 N.C.App. at 420, 508 S.E.2d at 306.

*Brackney,* 199 N.C.App. at 385–86, 682 S.E.2d at 408 (emphasis added).

■ Courts tend to value active appreciation or depreciation at the filing date to encourage the parties to engage in productive economic activity and discourage waste by allowing them to reap the reward of their labor and suffer the burden of their dissipation. *See, e.g., McDavid,* 333 S.C. at 496, 511 S.E.2d at 368; *Bowman v. Bowman,* 357 S.C. 146, 591 S.E.2d 654, 660 (Ct.App.2004). On the other hand, passive appreciation of marital property should be valued at a post-filing date when equity requires that both spouses share in the fruits of the marriage. *See, e.g., Fuller,* 370 S.C. at 546, 636 S.E.2d at 640. In making the public policy argument for the active and passive distinction it has been said:

It is fairer to value a passive asset at or near the time of the final hearing, because both parties are equally deserving to share in any increase or decrease. . . . [On the other hand,] active assets should be valued at the time of commencement [or filing] of the marital litigation, to enable the person who causes the change in value to receive the benefits of his or her labor and skills or, conversely, to prevent the person who controls the assets from manipulating the value downward during litigation.

Roy T. Stuckey, *Marital Litigation in South Carolina* 310 (3rd ed., 2001).

While this Court has never formally adopted the active and passive distinction, precedent in our state supports its adoption. In *Bowman,* the court of appeals noted that "passive post-filing changes in the appreciation or depreciation of marital assets may be considered by the family court in determining an equitable apportionment of the marital estate." 357 S.C. at 146, 591 S.E.2d at 660. Moreover, without using the

precise language, our courts in practice have applied the active and passive distinction in furtherance of equity and public policy. *See, e.g., Fuller,* 370 S.C. at 546, 636 S.E.2d at 640 (finding an IRA account that passively increased in value should be valued at the date of the final hearing rather than the divorce filing date); *Bowman,* 357 S.C. at 159, 591 S.E.2d at 660 (holding where the husband actively and intentionally depleted his retirement account, the account should be valued at the filing date); *Dixon,* 334 S.C. at 234, 512 S.E.2d at 545 (finding where the husband actively set out to destroy his business during the marital litigation, the proper valuation date for equitable division is the filing date); *Mallett v. Mallett,* 323 S.C. 141, 151, 473 S.E.2d 804, 810 (Ct.App.1996) (holding where the husband's insurance business decreased passively because of market forces, the proper valuation date was the date of the hearing rather than the filing date). In *McDavid v. McDavid,* this Court determined that the increase in the equity of a marital home from the time of filing to the time of trial stemmed from the reduction in the mortgage balance due solely to payments made by the wife and not her husband.[4] 333 S.C. at 496, 511 S.E.2d at 368. In other words, the wife's *active* contribution caused the appreciation in the equity of the marital home, and we determined the valuation date should be the date of filing. *Id.*

Applying the active and passive distinction in the present case, we find that appreciation in value of Avtex VII that occurred post-filing does not cross the threshold from passive to active. Husband's only real contribution to the Avtex VII project was to arrange the initial meeting between Small and the landowners. However, Husband made this contribution during the marriage so any value derived from it was marital property. S.C.Code Ann. § 20–3–630 (Supp.2010) ("The term 'marital property' as used in this article means all real and personal property which has been acquired by the parties during the marriage"). Husband claimed Avtex VII had no value at the time of filing because the equity value of the

---

4. Similar to the *Bowman* court, we recognized in *McDavid* that the statutory filing date is not appropriate for every situation and that "both parties *may* be entitled to share in any appreciation in marital assets which occurs after the parties separate but before the parties divorce." 333 S.C. at 497 n. 7, 511 S.E.2d at 369 n. 7 (emphasis added).

property was zero.[5] Assuming this proposition is true, only Husband's post-filing activities matters.

In this regard, the Record indicates that Husband's post-filing contribution was minimal, if any. Small financed 100% of the deal by taking out a personal loan, and Small testified that he purposely restricted Husband's role in the Avtex VII project. In addition, neither party contests that the Wal-Mart lease was the primary cause of the increase in the value of Avtex VII. The acquisition of the lease and the subsequent appreciation of the property was attributable to Small alone, and as Small testified, Husband played a "passive role" from January 2005 (the filing date) to September 2005 (the lease date). Husband's participation in the Avtex VII project amounted to attending two trade shows where he failed to attract any lessees or add value to the project. Consequently, the appreciation resulted from the labor of a third party. *See Brackney*, 199 N.C.App. at 385–86, 682 S.E.2d at 408 (citing with approval a definition of passive appreciation that includes "labor of a third party").

Under these facts, Husband's involvement does not cross the threshold from passive to active.[6] Thus, we formally adopt the active and passive distinction and deem the appreciation of Avtex VII passive, and value the property at the buyout date of the property rather than the filing date. Furthermore, we order that the passive gain be split fifty/fifty between the parties.

## II. Valuation of Avtex VI

With respect to Avtex VI, the family court allocated $254,920.35 as a non-marital asset and $194,730.82 as a marital asset subject to equitable division in recognition of Husband's

---

5. We question whether Husband's stake in the property really was valueless at the time of filing because of the business and investment opportunities that such a stake presents. However, we do not reach this question because here the parties dispute only the appreciation in the value of the land post-filing.

6. We emphasize that the determination of whether a person's involvement crosses the threshold from passive to active requires an intensive examination of the underlying facts, and in this particular case involving a close corporation, Husband's level of activity does not pass muster.

contribution in acquiring the Casual Living lease. By statute, marital property subject to equitable distribution is by default valued at the date of the divorce filing. S.C.Code Ann. § 20–3–630 (Supp.2010). While our jurisprudence has carved out exceptions to this rule, the burden of proof is properly on the party seeking a deviation from the statutory filing date. *See Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 56, 126 S.Ct. 528, 534, 163 L.Ed.2d 387 (2005) ("The burdens of pleading and proof with regard to most facts have and should be assigned to the plaintiff who generally seeks to change the present state of affairs and who therefore naturally should be expected to bear the risk of failure or proof or persuasion") (*quoting* 2 J. Strong, *McCormick on Evidence* § 337, p. 412 (5th ed.1999)).

Here, the burden of proof is on Wife to show Husband's activity is passive because she seeks a deviation. However, the Record is insufficiently developed to classify Husband's contribution to the acquisition of the Casual Living lease as passive. Thus, Wife fails to meet her burden of proof, and we affirm the family court's decision as to Avtex VI.

### III.  Son's Private School Education

Wife claims the family court erred in declining to require Husband to contribute to the expenses of Son's private school education. We agree.

Section 63–5–20(A) of the South Carolina Code entitled "Obligation to Support" requires a divorced person to "provide a living standard for the [child] substantially equal to that of the person owing the duty to support." S.C.Code Ann. § 63–5–20(A) (Supp.2010). In *Miller v. Miller*, this Court reiterated that family courts should "award support in an amount sufficient to provide for the needs of the children and to maintain the children at the standard of living they would have been provided but for the divorce." 299 S.C. 307, 312, 384 S.E.2d 715, 717 (1989). This may include contributing to private school expenses where appropriate. *See Rabon v. Rabon*, 288 S.C. 338, 340, 342 S.E.2d 605, 606 (1986) (ordering an increase in child support to cover private school tuition because "the children would benefit from enrollment at a [private school,] . . . . [f]ather [was] in good health, earn[ed] a

high income and [was] capable of meeting the increased expenses"); *LaFrance v. LaFrance*, 370 S.C. 622, 657, 636 S.E.2d 3, 22 (Ct.App.2006), *overruled on other grounds by Arnal v. Arnal*, 371 S.C. 10, 636 S.E.2d 864 (2006) (requiring the husband to contribute fifty-seven percent to child's private school tuition because the parties historically placed the child in private school, it was in the best interest of the child, and it was within the financial ability of the husband).

In the present case, Son has attended Heathwood Hall since kindergarten, and the Record does not suggest it would be detrimental or against the child's best interest to continue to attend Heathwood Hall. *Rabon*, 288 S.C. at 340, 342 S.E.2d at 606; *LaFrance*, 370 S.C. at 657, 636 S.E.2d at 22. We see no reason here to upset the status quo. Given Husband's income and high standard of living, Husband can afford to contribute approximately $6,000 towards Son's private education "to maintain [Son] at the standard of living [he] would have been provided but for the divorce." *Miller*, 299 S.C. at 312, 384 S.E.2d at 717; *see also* S.C.Code Ann. § 63–5–20(A).

Thus, we reverse the family court and order Husband to contribute fifty percent of the cost of Son's tuition at Heathwood Hall.

## IV. Reimbursement for Delinquent Payment

■ Wife argues the family court erred in denying reimbursement for a delinquent payment advanced by Wife. We agree.

Under a temporary court order, the family court directed Husband to pay $3,982.80 on the mortgage on the marital home. Husband did not tender the money, so Wife made the payment. When Wife sought reimbursement, the family court denied her request, noting that the stipulated payoff for the first mortgage at trial was $299,197, and Wife refinanced the mortgage with a payoff of $244,918.34. In the family court's view, Wife received a $54,279.66 windfall because the court relied on the stipulated amount to fashion an equitable apportionment of the marital property. Accordingly, the family court concluded that the amount of delinquent interest owed by the Husband should be absolved as a matter of equity.

■ In considering whether the family court erred, it is settled law in South Carolina that "[c]ourts have the inherent power to do all things reasonably necessary to insure that just results are reached to the fullest extent possible." *Buckley v. Shealy,* 370 S.C. 317, 323–24, 635 S.E.2d 76, 79 (2006) (*citing Ex Parte Dibble,* 279 S.C. 592, 595–96, 310 S.E.2d 440, 442 (Ct.App.1983)). Equally instructive is the equitable maxim that "[one] who seeks equity must do equity." *Provident Life & Accident Ins. Co. v. Driver,* 317 S.C. 471, 479, 451 S.E.2d 924, 929 (1994); *Ingram v. Kasey's Assocs.,* 340 S.C. 98, 107, 531 S.E.2d 287, 291 (2000).

In the present case, we need not decide whether Wife received a windfall in refinancing the marital home. In *Buckley v. Shealy,* this Court found the family court erred in awarding the husband a set-off for overpaying child support because the husband failed to make timely child support payments as ordered. 370 S.C. at 325, 635 S.E.2d at 80. Similarly, here, Husband violated an explicit court order to make the mortgage payment on the marital home. Therefore, Husband is not entitled to have his obligation absolved in equity since Husband did not act equitably in fulfilling his obligation to the court and to Wife. *Id; Provident Life & Accident Ins. Co.,* 317 S.C. at 479, 451 S.E.2d at 929.

Accordingly, we reverse the family court and order Husband to pay Wife the delinquent interest payment.

## V. Child Support Payment

■ Wife claims the family court abused its discretion in awarding $1,000 per month in child support. We disagree.

■ In determining whether or not to award child support, courts should consider both parents': (1) incomes; (2) ability to pay; (3) education; (4) expenses; (5) assets; and (6) the facts and circumstances surrounding each case. *Holcombe v. Hardee,* 304 S.C. 522, 524–25, 405 S.E.2d 821, 822 (1991) (*citing Miller v. Miller,* 299 S.C. 307, 384 S.E.2d 715 (1989)). Family court judges are generally required to follow the South Carolina Child Support Guidelines (Guidelines) when awarding child support. *Matter of Bennett,* 321 S.C. 485, 469 S.E.2d 608 (1996); *see also* S.C.Code Ann. § 63–17–470(A) (2010).

The family court determined that Wife had an income of $10,418.16 per month and Husband had an income of $6,792 per month. Wife paid $119 per month to provide health insurance for Son and $200 per month for babysitters. Because Son spent 132 overnights annually with Husband, the family court classified the case as a "shared custody" calculation under the Guidelines. Under a "shared custody" calculation under Worksheet C, Husband would be required to pay only $181 per month in child support. *See* S.C.Code Ann. Regs. 114–4720, *et. seq.* (Supp.2009). Therefore, by requiring Husband to pay $1,000 per month, the family court deviated upward and exercised its discretion to "provide a living standard for the [the child] substantially equal to that of the person owing the duty to support." S.C.Code Ann. § 63–5–20(A).

In our view, the family court did not abuse its discretion, and we affirm.

## VI. Attorney's Fees Assessed Against Wife

■■■ Wife asserts the family court improperly assessed attorney's fees. We disagree.

The family court expressed frustration at Wife's non-cooperation and delay.[7] After concluding that the "positions taken by [Wife] were not reasonable or appropriate," the court awarded Husband $3,250 in attorney's fees.

Wife asserts that the family court improperly relied on evidence of mediation in violation of ADR Rule 8(a)(4) on confidentiality to award attorney's fees.[8] Specifically, the family court found that "the majority of the issues brought before the Court by [Wife] were of such a nature that they

---

7. In its order, the family court noted, "[T]he Court has considered the lengthy period of time this property has been on the market for sale unsuccessfully and Wife's failure to remove Husband from the Paradise Island financing, despite the Order of the Court."

8. ADR rule 8(a)(4) provides:
   [T]he parties and any other person present shall maintain the confidentiality of the mediation and shall not rely on, or introduce as evidence in any arbitral, judicial, or other proceeding, any oral or written communication having occurred in a mediation proceeding, including but not limited to ... [t]he fact that another party had or had not indicated willingness to accept a proposal for settlement made by the mediator.

should have been resolved by the parties through agreement and/or mediation."

It is not clear that the family court considered confidential communications in reaching its decision to award attorney's fees because it merely looked at the "nature" of the "issues brought before the [c]ourt." *Id.* Even if the family court considered evidence of mediation, the Record suggests that both parties may have waived confidentiality by agreeing to voluntarily submit the various offers of settlement for the court's consideration. *See Eason v. Eason,* 384 S.C. 473, 480, 682 S.E.2d 804, 807 (2009) (a waiver is a voluntary and intentional abandonment or relinquishment of a known right) (citations omitted); *Laser Supply and Servs., Inc. v. Orchard Park Assocs.,* 382 S.C. 326, 336–38, 676 S.E.2d 139, 145 (Ct.App.2009) (the determination of whether one's actions constitute waiver is a question of fact). Nevertheless, the Record provides sufficient independent grounds for the family court to award attorney's fees based on Wife's non-cooperation and delay.

Thus, we affirm the family court's award of $3,250 in attorney's fees.

## CONCLUSION

For the foregoing reasons, we affirm in part and reverse in part.

**AFFIRMED IN PART AND REVERSED IN PART.**

BEATTY, KITTREDGE, JJ., and Acting Justices JAMES E. MOORE and DeANDREA GIST BENJAMIN, concur.