**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Robert W. Gillmann Jr., Appellant/Respondent,

v.

Beth Dixon Gillmann, Respondent/Appellant.

Appellate Case No. 2016-001829

Appeal From Lexington County
Deborah Neese, Family Court Judge
W. Greg Seigler, Family Court Judge

Unpublished Opinion No. 2019-UP-172
Heard February 13, 2019 – Filed May 15, 2019

**AFFIRMED IN PART AND REVERSED IN PART**

Max N. Pickelsimer, of Payne, Black, & Pickelsimer, LLC, of Columbia, for Appellant/Respondent.

Nancy A. Lipski, of Nancy A. Lipski, LLC, of Lexington, for Respondent/Appellant.

**PER CURIAM:** In this domestic relations case, Robert W. Gillmann, Jr., (Husband) and Beth Dixon Gillmann (Wife) both appeal the family court's final order and amended final order. Wife also appeals the denial of her motion to quash

deposition subpoenas of herself and her son.[1]  Husband argues the family court erred in: (1) awarding Wife permanent periodic alimony; (2) valuing the parties' property at 104 Cirrus Way; (3) apportioning the marital estate; and (4) requiring Husband to contribute to Wife's attorney's fees.  Wife argues the family court erred in: (1) finding the Barron twin engine plane (the Barron plane) to be non-marital property; (2) excluding Husband's proposed settlement agreement from evidence under Rule 408 of the South Carolina Rules of Evidence[2] (SCRE) when she intended to use the agreement to show Husband's intent that the Barron plane was marital property; (3) allowing Husband to use a vocational expert to impute income or reasonably anticipated earnings to Wife; (4) imputing income or reasonably anticipated earnings to Wife and awarding her only $2,000 a month in periodic alimony; (5) setting an erroneous alimony modification standard; (6) only awarding Wife $10,000 in attorney's fees; and (7) finding Husband more credible than Wife.  We affirm in part and reverse in part.

1. We find the family court erred in awarding Wife permanent periodic alimony, and we award Wife alimony of $2,000 per month for eighteen months from the date of divorce.  *Stoney v. Stoney*, 422 S.C. 593, 596, 813 S.E.2d 486, 487 (2018) ("[T]he proper standard of review in family court matters is de novo."); *id*. at 595, 813 S.E.2d at 487 ("[D]e novo review allows an appellate court to make its own findings of fact[.]").

"Alimony is a substitute for the support which is normally incident to the marital relationship" and is intended "to place the supported spouse, as nearly as is practical, in the position of support she enjoyed during the marriage." *Johnson v. Johnson*, 296 S.C. 289, 300, 372 S.E.2d 107, 113 (Ct. App. 1988).  However, "an alimony award should not serve as a disincentive for a spouse to make reasonable efforts to improve her employment potential or become self-sufficient." *Williamson v. Williamson*, 311 S.C. 47, 49, 426 S.E.2d 758, 760 (1993). There was compelling

---

[1] The trial court denied the motion as to Wife, but Husband withdrew his deposition subpoena for Wife's son.

[2] Rule 408, SCRE ("Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. . . .  This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negat[]ing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.").

evidence that, given her impressive experience and marketable skills in the banking industry, Wife would be able to find suitable employment at a significant salary within this eighteen month period.

We acknowledge permanent periodic alimony is the preferred form, but based on our review of the facts and considering the statutory factors, we find an alimony award of $2,000 per month to Wife for eighteen months is just and equitable in this case. *See* S.C. Code Ann. § 20-3-130(C) (2014); *Major v. Major*, 277 S.C. 318, 320–21, 286 S.E.2d 666, 668 (1982) (reversing the family court's denial of alimony and fashioning an appropriate award on appeal); *Holmes v. Holmes*, 399 S.C. 499, 507, 732 S.E.2d 213, 217 (Ct. App. 2012) (modifying an alimony award on appeal "[a]fter careful consideration of the facts of the case along with the statutory alimony factors"). The award shall apply retroactively from August 9, 2016 (the date of divorce) and, in light of the length of the parties' marriage, their ages, the fact that this was not either party's first marriage, both parties' good health, Wife's significant marital fault, Wife's substantial earning capacity, Wife's accumulation of significant credit card debt, and the parties' contributions to their lifestyle during the marriage, the award shall be applied for eighteen months, with Husband's alimony obligation being retroactively deemed to have terminated as of February 9, 2018. *See* S.C. Code Ann. § 20-3-130(B)(2) (2014) (allowing a court to award "[l]ump-sum alimony in a finite total sum to be paid . . . periodically over a period of time, terminating only upon the death of the supported spouse, but not terminable or modifiable based upon remarriage or changed circumstances in the future"); *Patel v. Patel*, 359 S.C. 515, 531, 599 S.E.2d 114, 122 (2004) (reversing the family court's refusal to award retroactive alimony following a prior appeal and remand); *Christy v. Christy*, 317 S.C. 145, 152, 452 S.E.2d 1, 4-5 (Ct. App. 1994) (acknowledging an appellate court may direct an alimony award to apply retroactively). To the extent that Husband has paid alimony to Wife after February 9, 2018, we hold Husband is entitled to full reimbursement for those payments from Wife.

2. We find the family court did not abuse its discretion in allowing Husband to use a vocational expert to impute income or reasonably anticipated earnings to Wife. *Stoney*, 422 S.C. at 594 n.2, 813 S.E.2d at 486 n.2 (stating appellate courts review the "family court's evidentiary or procedural rulings . . . using an abuse of discretion standard"); *see Dunn v. Charleston Coca-Cola Bottling Co.*, 307 S.C. 426, 432, 415 S.E.2d 590, 593 (Ct. App. 1992), *rev'd on other grounds*, 311 S.C. 43, 426 S.E.2d 756 (1993) ("The decision of whether or not to allow a witness to testify who was not previously listed on answers to interrogatories rests within the sound discretion of the trial judge."). We find the court properly determined Wife's official notification that she would lose her job due to a reduction in force warranted the use

of Husband's vocational expert, and Wife's inability or unwillingness to hire her own expert did not prejudice her. *See Dunn*, 307 S.C. at 432, 415 S.E.2d at 593 ("In deciding whether to allow such a witness to testify, the trial judge should consider the reason the new information was not provided earlier, the purpose of the new information[,] and the prejudice to the opposing party."). Moreover, we find the family court did not abuse its discretion in allowing Husband to depose Wife after the deposition deadline in the scheduling order passed because of the timing of Wife's change in employment status. *See* Rule 16(b), SCRCP ("The court shall make a written order which recites the action, if any, taken at the [pre-trial] hearing, the amendments allowed to the pleadings, and the agreements made by the parties as to any of the matters considered, and which limits the issues for trial to those not disposed of by admissions or agreements of counsel; and such order when entered controls the subsequent course of the action, *unless modified on motion*, *or at the trial to prevent manifest injustice*." (emphasis added)); James F. Flanagan, *South Carolina Civil Procedure* 137 (2d ed. 1996) ("The language of [Rule 16, SCRCP], particularly the 'manifest injustice' standard for modifying the order, suggests that good reason should be required for any changes. The order should not be followed blindly.").

3. We find the family court's alimony modification standard was not erroneous. The language of the order mirrors both S.C. Code Ann. §§ 20-3-130(B)(1) and 20-3-170 (2014), and the degree of any anticipated or unanticipated change in Wife's employment status is not an issue before this court.

4. We find the family court erred in valuing the parties' property at 104 Cirrus Way as of the date of their divorce filing rather than the date of sale. Husband, as the party seeking to deviate from the statutory filing date, bore the burden of proof to show the depreciation in the property's value was passive. *See Burch v. Burch*, 395 S.C. 318, 329, 717 S.E.2d 757, 763 (2011). The parties purchased the property for $65,000, and they stipulated that on January 31, 2014, the date of filing, the lot was valued at $65,000. Husband testified he listed the property for sale and began to market the lot when he was still living with Wife; however, the lot did not sell, and he eventually took the lot off of the market. Husband explained he later put the lot back on the market and ultimately sold it at a loss for $50,000, paying $1,300 at closing to complete the sale. Husband's testimony shows he made two valid attempts to sell the lot, and after being unable to sell the lot the first time during the marriage, he eventually accepted an offer that resulted in a net loss to him. It would be inequitable to have Husband pay Wife for the lot when he himself did not receive any value from the sale of the property. *See id.* at 326, 717 S.E.2d at 761 ("[P]assive appreciation [or depreciation] of marital property should be valued at a post-filing

date when equity requires that both spouses share in the fruits of the marriage."); *Mallett v. Mallett*, 323 S.C. 141, 151, 473 S.E.2d 804, 810 (Ct. App. 1996) (finding "it would be grossly unfair to value [an] asset as of the date of the commencement of the [divorce] action" when the value of the marital property depreciated without fault on behalf of either party). Accordingly, we find the property should have been valued as of the date of sale, and we reverse as to this issue.

5. We find the family court did not err in finding the Barron plane was non-marital property. *See* S.C. Code Ann. § 20-3-630(A) (2014) (providing nonmarital property includes "property acquired by either party by inheritance, devise, bequest, or gift from a party other than the spouse[,] property acquired by either party before the marriage[,] and . . . property acquired by either party in exchange for property" acquired by inheritance, by devise, by bequest, by gift, or before the marriage). Wife presented a prima facie case that the Barron plane was marital property by showing it was purchased during the parties' marriage. *Pruitt v. Pruitt*, 389 S.C. 250, 261, 697 S.E.2d 702, 708 (Ct. App. 2010) ("'The spouse claiming an equitable interest in property upon dissolution of the marriage has the burden of proving the property is part of the marital estate.' If a spouse carries this burden, a prima facie case is established that the property is marital property." (quoting *Johnson*, 296 S.C. at 294, 372 S.E.2d at 110)). Thus, the burden shifted to Husband to prove the Barron plane was nonmarital property. *See id.* ("If the opposing spouse then wishes to claim that the property is not part of the marital estate, that spouse has the burden of presenting evidence to establish its nonmarital character."). Both Husband and Wife testified Husband and his father owned a Cessna 182 airplane prior to the parties' marriage. They also both testified after marrying Wife, Husband formed an LLC named 625BB, for the purpose of gaining tax and liability advantages regarding the Cessna 182; Wife was not a member of 625BB, nor did she sign any documentation regarding 625BB. Husband testified he put the Cessna 182 into 625BB, and then, it sold the Cessna 182 for $78,000. Husband then testified in 2013, 625BB purchased the Barron plane for $148,000 to $149,000 using the proceeds from the sale of the Cessna 182 and the proceeds from liquidating gold coins from Husband's father, which combined accounted for $101,000 of the purchase price of the Barron plane.[3] Husband testified the gold coins from Father were a gift to only him, but Wife testified they were a gift to both of them. The family court found the gold coins were Husband's nonmarital property, noting Wife did not know the number of coins or their worth and Wife admitted she refused to file her taxes jointly with Husband

---

[3] Husband's financing agreement indicates the purchase price of the Barron was $147,000, and Husband paid $95,000 cash down. This left a financing amount of $52,000, but the promissory note indicates Husband was loaned $66,232.05.

in 2013 because she did not want to be liable for any potential tax consequences of liquidating the gold coins. In her testimony, Wife agreed the majority of the money to purchase the Barron plane would have come from the sale of the Cessna 182; however, she did testify she gave Husband a $4,000 check for the plane although she provided no documentary proof of this payment. Husband denied that Wife paid him $4,000 for the plane, and he explained the remainder of the purchase price was financed in a $66,000 security agreement, which was only signed by Husband. Accordingly, we find the plane is non-marital property because it was acquired in exchange for Husband's other non-marital property.

Furthermore, we find the Barron plane was not transmuted into marital property. *See Pittman v. Pittman*, 407 S.C. 141, 149, 754 S.E.2d 501, 505 (2014) ("The spouse claiming transmutation must produce objective evidence showing that, during the marriage, the parties themselves regarded the property as the common property of the marriage." (quoting *Jenkins v. Jenkins*, 345 S.C. 88, 98, 545 S.E.2d 531, 537 (Ct. App. 2001))). Husband and Wife both testified that she was not a member and played no part in 625BB, which owned the Barron plane. This is corroborated by the documents forming 625BB. Moreover, the fact that Husband named 625BB for himself and Wife does not mean he intended for either the Cessna 182 or the Barron plane to become marital property; rather, as he testified, he was simply seeking tax advantages and chose an "easy to remember" name. Accordingly, the Barron plane was not placed in a joint name or titled jointly. *See Johnson*, 296 S.C. at 295, 372 S.E.2d at 111 (providing evidence of transmutation may include "placing the property in joint names"). Additionally, Wife was also not included in the security agreement for the Barron plane's financing. Finally, the fact that Husband testified Wife benefited from the plane and the parties used the plane like another couple may use a car is not in itself enough to transmute the plane into marital property. *See Pruitt*, 389 S.C. at 261, 697 S.E.2d at 708 ("However, '[t]he mere use of separate property to support the marriage, without some additional evidence of intent to treat it as property of the marriage, is not sufficient to establish transmutation.'" (alteration in original) (quoting *Johnson*, 296 S.C. at 295–96, 372 S.E.2d at 111)). Husband testified the parties kept their finances separate, and when Husband sold Wife his old BMW, Wife signed an installment contract to pay Husband monthly. As such, Husband's testimony that the parties treated the airplane as a car does not mean he considered the plane to be marital property. Accordingly, we find the Barron plane did not transmute into marital property, and we affirm the family court's finding that the Barron plane was non-marital.

Nonetheless, because Husband financed part of the purchase price of the Barron plane, creating a marital debt, and made payments on the debt using his salary, which

was marital property, we find Wife is entitled to special equity in the Barron plane equal to one-half of the amount of marital funds used to support and build equity in the plane. *See Craig v. Craig*, 358 S.C. 548, 559, 595 S.E.2d 837, 843 (Ct. App. 2004) ("[S]pouse is entitled to a special interest to compensate for the contributions made to the nonmarital property and for the marital funds used in the improvement of the nonmarital property."); *see also Orszula v. Orszula*, 292 S.C. 264, 266, 356 S.E.2d 114, 114 (1987) (wages and substitutes for wages received during marriage are marital property); *Teeter v. Teeter*, 408 S.C. 485, 495, 759 S.E.2d 144, 149 (Ct. App. 2014) ("There is a rebuttable presumption that a debt of either spouse incurred prior to the beginning of marital litigation is marital and must be factored in the totality of equitable apportionment." (quoting *Schultze v. Schultze*, 403 S.C. 1, 8, 741 S.E.2d 593, 597 (Ct. App. 2013))); *Hamiter v. Hamiter*, 290 S.C. 508, 510, 351 S.E.2d 581, 582 (Ct. App. 1986) (funds derived from salary earned during marriage are marital property). Husband testified he makes a monthly $635 payment for the plane, and he made seven payments before the parties' separation. The seven payments totaled $4,445. He also testified he paid $12,855 for the Barron plane's annual maintenance on March 18, 2014. Because this payment occurred after the divorce filing, we do not include it in our calculation of the special equity owed to Wife. Accordingly, we find Wife is entitled to $2,222.50, half of the amount of the payments made on the Barron plane using Husband's salary prior to the divorce filing.

6. We find the family court did not abuse its discretion in excluding Husband's proposed settlement agreement from evidence because introducing the settlement agreement for the purpose of showing that Husband intended the Barron plane to be marital is the equivalent of introducing the settlement agreement to show that Husband's claim that the Barron plane was nonmarital was invalid. *See* Rule 408, SCRE ("Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is *not admissible to prove liability for or invalidity of the claim or its amount*." (emphasis added)); *Stoney*, 422 S.C. at 594 n.2, 813 S.E.2d at 486 n.2 (providing appellate courts review the "family court's evidentiary or procedural rulings . . . using an abuse of discretion standard"); *Pittman*, 407 S.C. at 149, 754 S.E.2d at 505 ("As a general rule, transmutation is a matter of intent to be gleaned from the facts of each case." (quoting *Johnson*, 296 S.C. at 295, 372 S.E.2d at 110)). Accordingly, we affirm the family court as to this issue.

7. We find the family court did not err in apportioning the marital estate. *See Stoney*, 422 S.C. at 596, 813 S.E.2d at 487 ("[T]he proper standard of review in family court

matters is de novo."); *id*. at 595, 813 S.E.2d at 487 ("[D]e novo review allows an appellate court to make its own findings of fact[.]"); *Moore v. Moore*, 414 S.C. 490, 526, 779 S.E.2d 533, 552 (2015) ("Upon dissolution of the marriage, marital property should be divided and distributed in a manner [that] fairly reflects each spouse's contribution to its acquisition, regardless of who holds legal title." (quoting *Morris v. Morris*, 335 S.C. 525, 531, 517 S.E.2d 720, 723 (Ct. App. 1999))). Here, when the parties married, Husband was forty-five, and Wife was forty-three, and at the time of their, divorce, Husband was fifty-six, and Wife was fifty-five. The parties were married for nine-and-a-half years prior to their separation. *See* S.C. Code Ann. § 20-3-620(B)(1) (2014). The family court granted the divorce, attributing fault to both parties. *See* S.C. Code Ann. § 20-3-620(B)(2) (2014). In particular, the family court granted Wife a divorce on the basis of adultery, finding she proved and Husband did not dispute that Husband entered into a sexual relationship after the parties separated. However, the family court also stated, "Husband's adultery did not cause the breakup of this marriage," finding Wife's physical and verbal abuse towards Husband "were more substantially the cause of the marriage's demise." Therefore, the family court found "Wife's fault [was] greater[,] and it caused the marriage to disintegrate." The parties had no children together. *See* S.C. Code Ann. § 20-3-620(B)(14) (2014). Additionally, the parties are both in relatively good health. *See* S.C. Code Ann. § 20-3-620(B)(5) (2014). Husband has no medical problems, and while Wife has some minor medical issues, they do not prevent her from working.

According to the marital estate chart in this case, the parties' marital property was valued at $84,622.65. *See* S.C. Code Ann. § 20-3-620(B)(3) (2014). This included the parties' marital home, two lots owned by the parties, Husband's truck, Wife's smart car, the parties' pensions, the parties' personal property, and the parties' credit card debt. Because we value 104 Cirrus Way as of the date of sale, not the date of filing, the marital estate chart's estimate of the value of the parties' marital property is inaccurate. 104 Cirrus Way should be valued at a net loss $1,300 because Husband testified he had to pay that amount to complete the sale of the property. The parties' nonmarital property would then be the Barron plane ($84,000), Husband's 401(k) growth since separation ($18,085), Wife's 401(k) growth since separation ($11,942), and Wife's timeshare ($1,000). *See* S.C. Code Ann. § 20-3-620(B)(7) (2014).

Husband and Wife both worked in the banking industry during the marriage and both contributed to the parties' acquisition of their marital property. *See* S.C. Code Ann. § 20-3-620(B)(4) (2014). According to his financial declaration, Husband had a gross monthly income of $13,347.00, a net monthly income of $8,498.00, and total monthly expenses of $8,608.74. *See* S.C. Code Ann. § 20-3-620(B)(4), (15) (2014).

At the time of the divorce filing, according to her financial declaration, Wife had a gross monthly income of $5,530.76, a net monthly income of $4,076.92, and monthly expenses of $4,493.48; however, days before the divorce hearing, Wife lost her job and filed a new financial declaration, which showed Wife had a gross and net monthly income of $1,043.12 and monthly expenses totaling $6,508.37. *See* § 20-3-620(B)(4), (15). Husband's expert witness testified he believed Wife would be rehired within eighteen months, and if she stayed in South Carolina, the average compliance officer salary was around $68,000. *See* § 20-3-620(B)(4). Additionally, while Husband contributed more to the parties' purchase of their home in South Carolina, Wife liquidated her retirement to help purchase the parties' prior marital home in Alabama. *See* § 20-3-620(B)(3). Furthermore, the parties testified they both cooked, Husband cared for Wife's son in South Carolina until Wife moved from Alabama to join Husband and her son, Wife took care of the inside of the house, and Husband did the yard work. *See id.* The family court awarded Wife $2,000 a month in permanent periodic alimony; however as discussed above, we reverse the award of permanent periodic alimony and, instead, award Wife $2,000 a month in alimony, retroactively applied, for eighteen months post-divorce. *See* S.C. Code Ann. § 20-3-620(B)(9) (2014).

Under these circumstances, we find the family court properly awarded fifty percent of the marital property to each party. *See, e.g.*, *Pittman*, 407 S.C. at 144–47, 153–54, 754 S.E.2d at 503–04, 508 (approving a fifty-fitty equitable apportionment where the parties were married for seven years before their separation, both parties worked during the marriage, and Wife was granted a divorce on the ground of adultery); *Ricigliano v. Ricigliano*, 413 S.C. 319, 337, 775 S.E.2d 701, 711 (Ct. App. 2015) (affirming a fifty-fifty split of a marital estate despite Wife's adultery where Wife made a greater contribution to the marital estate). Thus, we affirm as to this issue.

8. We find the issue of whether the family court erred in finding Husband more credible than Wife abandoned on appeal. *See, e.g., Glasscock, Inc. v. U.S. Fidelity & Guar. Co.*, 348 S.C. 76, 81, 557 S.E.2d 689, 691 (Ct. App. 2001) ("South Carolina law clearly states that short, conclusory statements made without supporting authority are deemed abandoned on appeal and therefore not presented for review."). Even if this issue was not abandoned, we would affirm based on our own view of the evidence. Our independent review of the evidence reveals no reason to disturb the trial court's credibility determinations. *See Lewis v. Lewis*, 392 S.C. 381, 390, 709 S.E.2d 650, 654 (2011) ("The highly fact-intensive nature of family court matters lends itself to a respect for the factual findings of our able and experienced

family court judges who are in a superior position to assess the demeanor and credibility of witnesses.").

9. We find the family court did not err in awarding Wife $10,000 in attorney's fees and costs, and we affirm as to this issue.[4] *See Glasscock v. Glasscock*, 304 S.C. 158, 161, 403 S.E.2d 313, 315 (1991) (providing that in determining whether attorney's fees are reasonable, the family court should consider: "(1) the nature, extent, and difficulty of the case; (2) the time necessarily devoted to the case; (3) professional standing of counsel; (4) contingency of compensation; (5) beneficial results obtained; [and] (6) customary legal fees for similar services."); *E.D.M. v. T.A.M.*, 307 S.C. 471, 476–77, 415 S.E.2d 812, 816 (1992) (providing in determining an award of attorney's fees, the family court should consider: "(1) the party's ability to pay his/her own attorney's fee; (2) beneficial results obtained by the attorney; (3) the parties' respective financial conditions; (4) effect of the attorney's fee on each party's standard of living").

**AFFIRMED IN PART AND REVERSED IN PART.**

**WILLIAMS, GEATHERS, and HILL, JJ., concur.**

---

[4] Because their arguments are substantially related, we address both Husband's and Wife's arguments as to attorney's fees together.