# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Samuel James Tomlinson, Appellant,

v.

Jenna M. Melton, (f/k/a) Jenna M. Tomlinson, Respondent.

Appellate Case No. 2016-002329

———————

Appeal From Richland County
Gwendlyne Y. Jones, Family Court Judge

———————

Opinion No. 5692
Heard April 9, 2019 – Filed November 13, 2019

———————

### REVERSED AND REMANDED

———————

Kenneth M. Mathews, of Columbia, and Katherine Carruth Goode, of Winnsboro, both for Appellant.

Harry C. Wilson, Jr., of Lee, Erter, Wilson, Holler & Smith, LLC, of Sumter, for Respondent.

———————

**SHORT, J.:** In this child custody action, Samuel Tomlinson (Father) appeals the family court's final order, arguing the family court erred in (1) ordering a week-to-week alternating custody arrangement, rather than continuing; (2) failing to make a finding as to Jenna Melton's (Mother's) child support arrearage and failing to offset that amount; and (3) abusing its discretion in its awards to Mother of child support and attorney's fees. We reverse and remand.

**FACTS**

Father and Mother married in Lexington County on March 8, 2008. In September 2008, Mother and Father had a son together (Child). On January 4, 2011, the family court issued a final order and decree of divorce. At the time of divorce, Child was three years old. The original divorce decree incorporated the custody agreement formed by the parties. In it, Mother and Father share joint custody of Child with Father as the primary custodial parent. The agreement stipulated Mother would have Child every other week from Wednesday at 4:00 p.m. until Monday at 3:00 p.m., various holidays, and equal time during summer months. The family court ordered Mother to pay child support of $100 monthly. The agreement stipulated a de novo review of child custody may be conducted before Child began kindergarten.

Prior to the start of kindergarten, Father filed an action for modification of custody, seeking "the full care, control and custody of [Child]" and requesting Mother receive visitation every other weekend. Mother answered, seeking full custody of Child. The family court held a temporary hearing on September 9, 2014, and subsequently issued a pendente lite order on October 7, 2014, that provided there was insufficient information to change the terms of the 2011 order.

Father lived in a large home in Kingstree and was employed as a physician at Williamsburg Regional Hospital. Mother remarried on July 5, 2016. Mother lived in Sumter with her husband, Cory Mickle, and their newborn daughter. Mother recently accepted a job at the Williamsburg School District, signed a rental contract for a two bedroom house in Kingstree, and purchased land in Kingstree in order to build a home near Child.

After a three-day hearing, the family court altered the original custody agreement and ordered divided week-to-week custody, with Father retaining final decision making authority. The family court modified custody to week-to-week because Child was in school and both parents would soon live in the same city. The family court stated, "it is inappropriate to reduce the amount of parenting time for [Mother] when she is now in the same city," when "[s]he received more than alternating weekends . . . while living in another city." The family court ordered Father to pay child support in the amount of $659.00 a month and attorney's fees of $8,500. The order did not reflect any offset for arrears Mother owed Father. Father filed a motion to reconsider—arguing the family court failed to consider Child's stability and failed to offset Mother's arrears—which the family court denied. Father appealed.

**STANDARD OF REVIEW**

On appeal from the family court, the appellate court reviews factual and legal issues de novo. *Stoney v. Stoney*, 422 S.C. 593, 596, 813 S.E.2d 486, 487 (2018). Thus, the appellate court has the authority to find the facts in accordance with its own view of the preponderance of the evidence. *Lewis v. Lewis*, 392 S.C. 381, 384, 709 S.E.2d 650, 651 (2011). However, this broad scope of review does not require the appellate court to disregard the fact that the family court, which saw and heard the witnesses, was in a better position to evaluate their credibility and assign comparative weight to their testimony. *Id.* at 385, 709 S.E.2d at 651-62. Therefore, the appellant bears the burden of convincing the appellate court that the family court committed error or that the preponderance of the evidence is against the court's findings. *Id.* at 392, 709 S.E.2d at 655.

**LAW/ANALYSIS**

**I.      Week-to-Week Alternating Custody**

Father argues the family court erred in establishing a week-to-week divided custody arrangement. We agree.

"The family court has exclusive jurisdiction . . . to order joint or divided custody where the court finds it is in the best interests of the child." S.C. Code Ann. § 63-3-530(A)(42) (2010). "However, '[a]lthough the legislature gives family court judges the authority to order joint or divided custody whe[n] the court finds it is in the best interests of the child, . . . joint or divided custody should only be awarded whe[n] there are exceptional circumstances." *Clark v. Clark*, 423 S.C. 596, 606, 815 S.E.2d 772, 777 (Ct. App. 2018) (alterations by *Clark* court) (quoting *Lewis v. Lewis*, 400 S.C. 354, 365, 734 S.E.2d 322, 327 (Ct. App. 2012) (omission by *Lewis* court)) (finding one parent's attempt to alienate the other, the excessive "passage of time," and "good reports on [c]hild's welfare and mental adjustment to the situation comprise exceptional circumstances warranting joint custody"); *see also Scott v. Scott*, 354 S.C. 118, 125-27, 579 S.E.2d 620, 623-25 (2003) (finding exceptional circumstances where the alternating periods of custody were not brief, but four week periods, and where both parents were fit, loved, and wanted their children); *Spreeuw v. Barker*, 385 S.C. 45, 61, 682 S.E.2d 843, 851 (Ct. App. 2009) (finding exceptional circumstances where "a seven year delay occurred between the issuance of the family court's final order . . . and oral argument . . . .").

"[D]ivided custody is usually harmful to and not conducive to the best interest and welfare of the children." *Scott*, 354 S.C. at 125, 579 S.E.2d at 623 (footnote omitted) (quoting *Mixson v. Mixson,* 253 S.C. 436, 446, 171 S.E.2d 581, 586 (1969)). The *Scott* Court explained why it disfavored divided custody:

> The courts generally endeavor to avoid dividing the custody of a child between contending parties, and are particularly reluctant to award the custody of a child **in brief alternating periods** between estranged and quarrelsome persons. Under the facts and circumstances of particular cases, it has been held improper to apportion the custody of a child between its parents . . . for ordinarily it is not conducive to the best interests and welfare of a child for it to be shifted and shuttled back and forth **in alternate brief periods** between contending parties, particularly during the school term. Furthermore, such an arrangement is likely to cause confusion, interfere with the proper training and discipline of the child, make the child the basis of many quarrels between its custodians, render its life unhappy and discontented, and prevent it from living a normal life.

*Id.* at 125-26, 579 S.E.2d at 624 (quoting *Mixon*, 253 S.C. at 447, 171 S.E.2d at 586).

Here, the family court made no specific findings of exceptional circumstances to justify divided custody, nor do we find any from our de novo review. The record reflects both parents are fit, loving, and want custody of Child. While we applaud both parents for their part in raising a respectful, intelligent, and caring child, the record reflects no exceptional circumstances to justify week-to-week divided custody.

On the contrary, the circumstances of this dispute reflect that divided custody is not in Child's best interest. Here, the family court ordered divided custody for week-to-week periods. Week-to-week divided custody will rarely be in the best interest of the child, especially during the school year. *See Courie*, 288 S.C. at 168, 341 S.E.2d at 649; *Scott*, 354 S.C. at 125-27, 579 S.E.2d at 623-25 (providing that week-to-week custody was brief, but four week periods of custody was sufficiently long enough to negate harmful effects of divided custody); *Woodall v. Woodall*, 322 S.C. 7, 12-13, 471 S.E.2d 154, 158 (1996) (holding visitation that

shuttled child back and forth for brief periods of two weeks at a time was not in child's best interest).

Additionally, the record reflects both Mother and Father have a divisive relationship and fail to communicate effectively. The record reflects over 4,500 text messages, calls, and emails from Mother to Father where she regularly and frequently requests changes to the schedule. Further, both parties think the other is a bad influence on Child. *See Lewis*, 400 S.C. at 367, 734 S.E.2d at 329 (finding divided custody is not in best interest of the child when there is an "acrimonious relationship between Husband and Wife"). Because we find there are no exceptional circumstances, the divided custody is in brief periods, and Mother and Father's relationship is acrimonious, we hold divided custody is not in the best interest of Child.

## II.    Failure to Offset Child Support

Father argues the family court erred in failing to find Mother's child support arrearage and failing to offset that amount against the child support Father was required to pay. We agree.

The original child custody agreement ordered Mother to pay $100 a month in child support. Mother admitted she did not pay child support since the 2011 order.[1] Mother argues this issue was not preserved because Father did not request arrears in his pleadings. While the pleadings did not contain a specific request for arrearage, it did request Mother to pay child support. Mother and Father both testified Mother did not pay child support for five years, from the 2011 order, until the family court hearing on October 11, 2016.

In addressing Father's pleading for child support, the family court as a court of equity must consider the matter as thoroughly as possible. *See Burch v. Burch*, 395 S.C. 318, 331, 717 S.E.2d 757, 764 (2011). Courts have "the inherent power to do all things reasonably necessary to insure that just results are reached to the fullest extent possible." *Id.* at 318, 331, 717 S.E.2d at 764. Additionally, during Mother's

---

[1] Mother gave Father a check for $2,300, in August dated September 24, 2014, for some of the three years of back child support. Father stated because the check was postdated he was unable to cash the check when he first received it; however, he attempted to cash the check on November 18, 2014, but failed because Mother placed a stop pay order on it.

testimony she admitted one of the requests Father made at the hearing was for payment of her child support arrears.

The family court should have considered Mother's arrearage because the issue was presented to the family court through both parties' testimony and because it was necessary in the interest of equity. Therefore, we hold Father did not have to separately plead the issue of arrearages to preserve the issue; when he pled for child support, the issue was raised through testimony, and Mother's failure to pay was confirmed from the testimony of both parties. Because the family court was responsible for determining when child support payments should begin and what each party owes, the family court should have offset Father's child support by $6,000.

Father also argues the family court abused its discretion in its award of child support and attorney's fees. Because we held the family court erred on custody, we reverse and remand for the determination of primary custody and child support. As to the issue of attorney's fees, we also remand for the family court to reweigh the "beneficial results obtained" pursuant to the custody determination. *Lewis*, 400 S.C. at 372, 734 S.E.2d at 331.

## CONCLUSION

Accordingly, the family court's order is

**REVERSED AND REMANDED.**

**LOCKEMY, C.J., concurs.**

**MCDONALD, J., concurring in a separate opinion.**

**MCDONALD, J.,** concurring in result:

I concur in the result reached here, as I agree with the majority's reversal of the family court's custody award and the majority's analysis of the child support arrearage offset question. I respectfully concur in result only as to the child custody analysis, however, because I am concerned that the continued application of our language disfavoring awards of joint or divided custody is incompatible with the realities of family court practice today. Moreover, I believe this judicially created language of disfavor—as well as our requirement that a family court find "exceptional circumstances" to support an award of joint custody—is inconsistent

with the General Assembly's grant of jurisdiction to our family courts "to order joint or divided custody where the court finds it is in the best interests of the child." S.C. Code Ann. § 63-3-530 (A)(42) (Supp. 2018).

In 1996, when the General Assembly codified joint custody as an option for family courts to consider in child custody determinations, it added no caveat of disfavor nor any "exceptional circumstances" element to the statute.[2]  Our supreme court readopted the "exceptional circumstances" language in 2003, when it reasoned:

> This Court has stated that "[d]ivided custody is usually harmful to and not conducive to the best interest and welfare of the children." *Mixson v. Mixson,* 253 S.C. 436, 446, 171 S.E.2d 581, 586 (1969).  Therefore, only under "exceptional circumstances" should joint custody be ordered. *Id.* at 447, 171 S.E.2d at 586; *see also Courie v. Courie,* 288 S.C. 163, 168, 341 S.E.2d 646, 649 (Ct. App. 1986) ("Divided custody is avoided if at all possible, and will be approved only under exceptional circumstances.").
>
> In 1996, the Legislature amended the statute governing the family court's jurisdiction to specifically grant the family court the exclusive jurisdiction "[t]o order joint or divided custody where the court finds it is in the best interests of the child."  S.C. Code Ann. § 20-7-420 (Supp. 2002).  Thus far, the only published decision to comment on this subsection is *Stanton v. Stanton,* 326 S.C. 566, 484 S.E.2d 875 (Ct. App. 1997), where the Court of Appeals stated the following: "Although joint or divided custody is now permitted under S.C. Code Ann. § 20-7-420(42) (Supp. 1996), visitation amounting to

---

[2]  When enacted, the subsection granting family courts jurisdiction "to order joint or divided custody" was codified at § 20-7-420(42).  However, in 2008, the General Assembly created the South Carolina Children's Code by adding Title 63 and transferring all provisions of Title 20, Chapter 7 to Title 63.  *See* Act. No. 361, 2008 Acts 3623.  This language from § 20-7-420(42) is now found in § 63-3-530(A)(42).

divided custody is disfavored by our supreme court." *Id.*
at 573, 484 S.E.2d at 878-79.

It is our opinion section 20–7–420(42) did not change the
law in this State that, generally, joint custody is
disfavored. *Mixson, supra.* Nevertheless, our focus
remains on the best interest of the child. *See Patel,
supra*; § 20–7–420(42). The issue therefore is whether
this case presents exceptional circumstances such that the
best interest of the child requires an award of joint
custody. We conclude it does.

*Scott v. Scott*, 354 S.C. 118, 125, 579 S.E.2d 620, 623-24 (2003) (footnote
omitted). [3]

Further, language suggesting "divided custody is usually harmful" or requiring a
finding of "exceptional circumstances" appears incongruous with Section 63-5-30
of the South Carolina Code, which provides:

The mother and father are the joint natural guardians of
their minor children and are equally charged with the
welfare and education of their minor children and the
care and management of the estates of their minor
children; and the mother and father have equal power,
rights, and duties, and neither parent has any right
paramount to the right of the other concerning the
custody of the minor or the control of the services or the
earnings of the minor or any other matter affecting the
minor. Each parent, whether the custodial or
noncustodial parent of the child, has equal access and the
same right to obtain all educational records and medical
records of their minor children and the right to participate
in their children's school activities unless prohibited by
order of the court. Neither parent shall forcibly take a

---

[3] Notably, the *Scott* court's focus appropriately remained on the best interests of the
child, and it affirmed the family court's award of joint custody. *Id.* at 127, 579
S.E.2d at 624-25.

child from the guardianship of the parent legally entitled
to custody of the child.

S.C. Code Ann. § 63-5-30 (2010).

While our supreme court in *Scott* recognized divided custody is not a perfect solution in disputed custody cases (and in many cases, may be inappropriate), we should not continue to graft outdated, judicially created considerations to child custody analyses. This limits the options available to parties, family court practitioners, and family court judges seeking the best custody plans for families under the particular circumstances of their cases and family situations.

Thus, I respectfully concur in result here, as I believe it is time for our supreme court to reconsider this language disfavoring joint custody—along with any requirement that our family courts find "exceptional circumstances" to justify joint custody awards—to alleviate any concerns our family courts may have regarding the circumstances in which they may award "joint or divided custody" pursuant to the legislature's grant of jurisdiction in § 63-3-530(A)(42).