759 S.E.2d 144

**James Arthur TEETER, III, Appellant,**

v.

**Debra M. TEETER, Respondent.**

**Appellate Case No. 2012-212565.**

**No. 5203.**

Court of Appeals of South Carolina.

Heard Dec. 11, 2013.

Decided March 5, 2014.

Withdrawn, Substituted and Refiled May 21, 2014.

Rehearing Denied June 25, 2014.

---

488

Jean P. Derrick, of Lexington, for Appellant.

C. Vance Stricklin, Jr., of Moore, Taylor & Thomas, P.A., of West Columbia, and Katherine Carruth Goode, of Winnsboro, for Respondent.

KONDUROS, J.

James Arthur Teeter, III (Husband) appeals the family court's rulings regarding the valuation and classification of property in this divorce action. He also argues the family court erred in excluding information obtained from the e-mail account of Debra Teeter (Wife) regarding her relationship with another man. We affirm as modified and remand.

## FACTS/PROCEDURAL HISTORY

Husband and Wife married in November 1996.[1] At that time, Husband was employed as a stock broker for Prudential Securities. He owned several parcels of real estate including his residence, the Indian Creek property, and three rental properties. During the marriage, Husband changed employers and went to work for Legg Mason as a stock broker. He eventually founded his own investment firm, Apex Investment Advisors, LLC, in 2003. Wife became a certified fraud examiner during the marriage. At the time of the temporary hearing in May 2009, Husband claimed gross annual income of $71,000 and Wife claimed $78,756. At the time of the final hearing, in 2011, Husband claimed gross annual income of $116,000 and Wife claimed $97,000.[2] Husband and Wife always maintained separate checking accounts, and Husband put all his regular income, rental income, and proceeds from real estate transactions into his single account.

In 1998, Husband sold the Indian Creek property, and the parties bought their dream home (Bob White property). Husband generally made the mortgage payment on the property and paid for utilities and repairs, while Wife bought groceries and paid for childcare and other miscellaneous expenses. During the marriage, Husband purchased additional rental properties. The division of some of those properties is at issue on appeal, and the details of those transactions are set

---

1. Two children were born to Husband and Wife but all issues related to the children have been settled by agreement.

2. Wife waived alimony prior to the final hearing.

forth below. Generally, Husband claims he sold or mortgaged nonmarital rental properties for a portion of the newly acquired properties and borrowed the rest in the form of a mortgage on the properties, which were self-supporting.

The parties agreed that after the birth of their second child in 2001, they began to grow apart. After the parties separated in 2008, Husband suspected Wife was involved with another man. He testified he saw Wife's e-mail password written on a sheet of paper that was lying on top of her open purse while he was visiting the marital home to see the children. Husband also testified he installed spyware on Wife's computer but indicated it did not produce any relevant information, only a couple of "garbled" screen shots. Husband read some of Wife's e-mails, which revealed she had been in contact with a former colleague. In one series of e-mails from 2009, Wife attempted to convince the man to meet her in Myrtle Beach. Additionally, Wife admitted at trial she had lied to Husband about attending a class reunion in Nashville and instead went to see the former colleague in Arizona in 2010. Wife never admitted to committing adultery. Husband admitted to committing post-separation adultery.

The family court had previously granted the parties' divorce based on one year's continuous separation. With respect to equitable apportionment, the family court determined the division of marital assets should be 55%/45% in Husband's favor. The family court excluded evidence of Wife's e-mails and the evidence flowing therefrom on the basis that their interception violated the Electronic Communications Privacy Act. However, the family court emphasized that Wife's alleged adultery had no impact on its division of assets.

The family court determined the Glenn Street properties, rental properties purchased by Husband during the marriage, were marital property. The court further determined Husband's business was marital property and assigned it a value of $74,775.32 based upon a balance sheet prepared by Husband in 2011. The family court assigned equity of $12,600 to the Garner Lane property acquired by an LLC Husband created during the marriage to lease the property to Apex Investors. As part of the division of assets, the parties were to sell the Bob White property, where Wife had been living

with the children since the parties separated. Wife was to pay 45% of the mortgage and Husband was to pay 55% until the property sold. Finally, the family court awarded Wife $15,000 in attorney's fees, reasoning Husband's dispute over the Glenn Street properties and his activities concerning Wife's e-mails had generated a large portion of Wife's attorney's fees. Husband's request for attorney's fees and private detective's fees was denied. This appeal followed.

## STANDARD OF REVIEW

"In reviewing the decision of the family court, an appellate court has the authority to find the facts in accordance with its own view of the preponderance of the evidence." *S.C. Dep't of Soc. Servs. v. Sarah W.*, 402 S.C. 324, 333–34, 741 S.E.2d 739, 744 (2013). "While this [c]ourt retains its authority to make its own findings of fact, we recognize the superior position of the family court in making credibility determinations." *Id.* at 334, 741 S.E.2d at 744. "Moreover, consistent with our constitutional authority for *de novo* review, an appellant is not relieved of his burden to demonstrate error in the family court's findings of fact." *Lewis v. Lewis,* 392 S.C. 381, 392, 709 S.E.2d 650, 655 (2011). Therefore, "the family court's factual findings will be affirmed unless appellant satisfies this court that the preponderance of the evidence is against the finding of the [family] court." *Id.* (internal quotation marks omitted).

## LAW/ANALYSIS

### I. Exclusion of Emails

Husband contends the family court erred in concluding he violated the Electronic Communications Privacy Act, 18 U.S.C.A. § 2515 (2000), based on a lack of credibility in his testimony that he accessed Wife's e-mails by means other than spyware.[3] He further maintains the family court erred by interpreting the statute to preclude all the evidence of Wife's alleged adultery except the actual e-mails. We disagree.

---

3. 18 U.S.C.A. § 2515 provides "[w]henever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court...."

The family court did not find Husband's testimony that he stumbled onto Wife's password to be credible. Husband admitted he installed spyware on Wife's computer for the purpose of monitoring her e-mails. The determination of credibility lies largely within the province of the family court. The record supports the family court's factual finding in light of Wife's testimony that she had not written down her password and would have left it in her planner at work had she done so. The only way Husband knew to investigate Wife's out-of-town trip was by accessing her e-mail account. Without further argument or testimony that Husband's installation of the spyware did not violate the Act, Husband has not demonstrated the family court erred by excluding all the evidence related to Wife's relationship with her former colleague. *See Rickenbaker v. Rickenbaker,* 290 N.C. 373, 226 S.E.2d 347, 352–53 (1976) (holding all evidence regarding the wife's adulterous conduct derived by the husband's interception of her phone calls inadmissible under the Act).

Even if the family court erred in excluding evidence of the relationship, the court explicitly stated in its order that neither Wife's conduct nor Husband's post-separation adultery were considered in the equitable division of assets.[4] The court determined Husband and Wife grew apart as a consequence of not communicating after the birth of their second child. While Wife's post-separation contact with her former colleague was not completely irrelevant, the family court determined it did not impact the break-up of the marriage nor deplete the marital assets. That is a finding well-within the family court's purview, and Husband has not met his burden of proving the family court erred.

## II. Glenn Street Properties

Husband argues the family court erred in determining the Glenn Street properties, purchased or created during the marriage, were marital assets. We disagree.

Husband purchased 951 Glenn Street in 1998 for approximately $60,000. He testified he used $11,726 in proceeds from the sale of the Indian Creek property as a down payment.

---

4. *See McCall v. Finley,* 294 S.C. 1, 4, 362 S.E.2d 26, 28 (Ct.App.1987) ("[W]hatever doesn't make any difference, doesn't matter.").

HUD statements support that Husband sold the Indian Creek property, received approximately $34,000 in proceeds, and purchased 951 Glenn Street two weeks later with an $11,726 down payment. Husband financed the remainder of the purchase price with a mortgage on the property, and the record shows 951 Glenn Street generated enough rent to cover the mortgage payments. Wife testified she did not know the source of the funding to buy 951 Glenn Street.

In March 2001, Husband mortgaged a nonmarital property (the Wellington property) and netted $29,524. Husband testified that in November 2001, he used those funds to subdivide 951 Glenn Street into two additional lots, 947 and 955, and make improvements to them. Husband made total improvements of $87,543 to the two new lots utilizing personal credit lines to pay for the remainder of the improvements. When the work was completed, Husband mortgaged 947 Glenn Street and 955 Glenn Street for $111,800. He paid off the credit lines with the mortgage loan and the rent generated covered the mortgage payments.

■■■ Generally, property acquired during a marriage is considered marital property regardless of how title is held. S.C.Code Ann. § 20–3–630(A) (Supp.2012). Two exceptions to this general rule include property acquired before the marriage or property acquired in exchange for nonmarital property. *Id.* "The burden to establish an exemption under section [20–3–630] is upon the one claiming that the property is not marital property." 13 S.C. Jur. *Divorce* § 57 (1992).

> The nonmarital character of ... property may be lost if "the property becomes so commingled as to be untraceable; is utilized by the parties in support of the marriage; or is titled jointly or otherwise utilized in such manner as to evidence an intent by the parties to make it marital property."

*Myers v. Myers*, 391 S.C. 308, 319, 705 S.E.2d 86, 92 (Ct.App. 2011) (quoting *Hussey v. Hussey*, 280 S.C. 418, 423, 312 S.E.2d 267, 270–71 (Ct.App.1984)). "The phrase 'so commingled as to be untraceable' is important because the mere commingling of funds does not automatically make them marital funds." *Id.* (quoting *Wannamaker v. Wannamaker*, 305 S.C. 36, 40, 406 S.E.2d 180, 182 (Ct.App.1991)).

■ " 'For purposes of equitable distribution, a marital debt is a debt incurred for the joint benefit of the parties regardless of whether the parties are legally liable or whether one party is individually liable.' " *Schultze v. Schultze*, 403 S.C. 1, 8, 741 S.E.2d 593, 597 (Ct.App.2013) (quoting *Wooten v. Wooten*, 364 S.C. 532, 546, 615 S.E.2d 98, 105 (2005)). "There is a rebuttable presumption that a debt of either spouse incurred prior to the beginning of marital litigation is marital and must be factored in the totality of equitable apportionment." *Id.*

■ In this case, because the Glenn Street properties were purchased or created during the marriage, Husband bears the burden of establishing the properties were nonmarital. The family court concluded Husband failed to meet this burden because the nonmarital funds used to purchase and improve the properties were so commingled into Husband's checking account as to be untraceable. Furthermore, the family court noted the properties were primarily acquired with debt incurred during the marriage.

We conclude the family court correctly determined 951 Glenn Street was a marital asset. Husband testified he used $11,726 from the sale of the nonmarital Indian Creek property as a down payment. The remainder of 951 Glenn Street was acquired through a mortgage on the property. While the record demonstrates the property generated enough income to cover the mortgage payment, the debt was incurred during the marriage and the rental income from the property was used to benefit both parties. Husband testified excess rental proceeds were used in support of the marriage, and the rental payments were always deposited into Husband's general checking account. Therefore, we affirm the family court's determination that 951 Glenn Street constituted marital property.

■ However, applying our *de novo* standard of review, we find Husband was able to establish nonmarital funds contributed to the initial purchase of 951 Glenn Street. His down payment of $11,726 was sufficiently traceable to the sale of the Indian Creek property. Wife did not dispute Husband's testimony regarding his use of the Indian Creek funds, and the HUD statements from the closing of the Indian Creek

sale and Glenn Street purchase support Husband's testimony.[5] Additionally, the sale of the Indian Creek property and the purchase of Glenn Street occurred only two weeks apart. *See Myers*, 391 S.C. at 319–20, 705 S.E.2d at 92–93 (finding Husband's truck was nonmarital property when he inherited $60,000, deposited the funds into a joint account holding his general income, wrote a check for the truck the following day, and Wife could not dispute that the inheritance was the source of funds for the truck).

Although Husband is entitled to recognition of this nonmarital contribution, we decline to modify the family court's equitable division ratio of the marital estate. Husband is not entitled to a "refund" of his down payment contribution.[6] That contribution is merely to be considered a factor in the overall equitable distribution between the parties. The family court acknowledged that Husband had made a larger direct financial contribution to the acquisition of marital assets— 65%. Husband's down payment contribution is not significant enough to warrant modification of the family court's otherwise well-reasoned equitable distribution of 55% of the marital assets to Husband and 45% to Wife.

With respect to the division and improvements that created 947 and 955 Glenn Street, we agree with the family court that Husband's contribution from the Wellington property was not sufficiently traceable. The Wellington mortgage was secured six months prior to the expenditures on the Glenn Street lots, and the funds were routed through Husband's single checking account. Furthermore, the remainder of the improvements was ultimately paid for with a mortgage on the properties themselves. Accordingly, we affirm the family court's determination that all of the Glenn Street properties were marital property.

---

5. Wife did not contend at trial the Indian Creek property had been transmuted.

6. *See Barrow v. Barrow*, 394 S.C. 603, 614, 716 S.E.2d 302, 308 (Ct.App.2011) ("[A]ny special equity . . . in the marital home was not to be apportioned separately but was to be considered as a factor in equitable distribution." (citing *Dawkins v. Dawkins*, 386 S.C. 169, 173–74, 687 S.E.2d 52, 54 (2010), *abrogated on other grounds by Lewis v. Lewis*, 392 S.C. 381, 709 S.E.2d 650 (2011))).

## III. Valuation of Garner Lane Property

 Next, Husband maintains the family court erred in determining the value of and equity in the Garner Lane property. We disagree.

The Garner Lane property is a commercial space purchased by JJ & M, LLC, an entity formed by Husband for the purpose of purchasing the property. Husband's business, Apex Investors, leases it for office space. JJ & M purchased the property for $129,900 in 2005. Wife testified she believed the current fair market value of the property at the time of the final hearing was $130,000. Husband testified the value of the property had gone down based on the declining real estate market and valued the property at $108,000. Neither party had the property appraised for trial because of the expense. We affirm the family court's valuation of the Garner Lane property as it was within the range of values presented at trial. *See Reiss v. Reiss*, 392 S.C. 198, 205, 708 S.E.2d 799, 802 (Ct.App.2011) (holding the family court may accept the valuation of one party over another, and the court's valuation of marital property will be affirmed if it is within the range of evidence presented).

Furthermore, the family court found $12,600 in equity in the property. The parties do not dispute that rental payments from Apex Investors to JJ & M are what reduced the mortgage and created any equity in the property. However, Husband contends because his business was the tenant, he should be credited with the creation of that equity. This argument is without merit, and we affirm the family court's ruling.

## IV. Valuation of Husband's Business

Husband contends the family court erred in valuing his investment business closer in time to the final hearing than the dating of filing. We agree.

 "In South Carolina, marital property subject to equitable distribution is generally valued at the divorce filing date. However, the parties may be entitled to share in any appreciation or depreciation in marital assets occurring after a separation but before divorce." *Burch v. Burch*, 395 S.C. 318, 325, 717 S.E.2d 757, 761 (2011) (citations omitted); *see also*

S.C.Code Ann. § 20–3–630(A). The party seeking a deviation from the statutory filing date bears the burden of proof. *Burch,* 395 S.C. at 329, 717 S.E.2d at 763. "Passive appreciation refers to enhancement of the value of property due solely to inflation, changing economic conditions, or market forces, or other such circumstances beyond the control of either spouse. [A]ctive appreciation, on the other hand, refers to financial or managerial contributions of one of the spouses." *Id.* at 325–26, 717 S.E.2d at 761 (citations, emphasis, and internal quotation marks omitted).

> "It is fairer to value a passive asset at or near the time of the final hearing, because both parties are equally deserving to share in any increase or decrease. . . . [On the other hand,] active assets should be valued at the time of commencement [or filing] of the marital litigation, to enable the person who causes the change in value to receive the benefits of his or her labor and skills or, conversely, to prevent the person who controls the assets from manipulating the value downward during litigation."

*Id.* at 326, 717 S.E.2d at 761 (alterations in *Burch* ) (quoting Roy T. Stuckey, *Marital Litigation in South Carolina* 310 (3rd ed., 2001)).

*Burch* had not been published at the time of the final hearing in this action. However, the passive/active analysis generally applied by our courts prior to *Burch* and specifically adopted therein is the proper approach for valuing Husband's business. The family court valued Apex Investors at $74,775.32 based upon a balance sheet prepared by Husband in 2011. Husband argues the correct valuation would have been reflected on the balance sheet he prepared at the time of filing in 2008, which showed a value of negative $784.56.[7,8]

 In determining whether using the 2011 figure was appropriate, we must consider whether the change in value of the business was passive appreciation or active appreciation

---

7. Neither Husband nor Wife presented expert testimony at trial as to the value of Husband's business.

8. In his brief, Husband acknowledges the existence of a $5,000 note payable to shareholder that should be included in the 2008 value of the business. Therefore, the valuation of the business in 2008 would be $4,215.44.

based upon Husband's efforts. The change was, according to Husband's own testimony, a reflection of the changing stock market. Although the business is not a publicly owned company, the fact that it is an investment company means the stock market will affect the transactions clients make and the commission or profit generated for Apex Investors. In that sense, the business could be positively affected by a change in the stock market. However, Husband's expertise and efforts were required to take advantage of these changes to benefit Apex Investors. Had Husband not advised clients to make certain transactions at certain times, any benefit of the change in the market would not have been realized within the business. Based on the record before us, we cannot conclude Wife met her burden of establishing the change in the value of Apex Investors was passive appreciation. Therefore, the family court erred in valuing it based on the 2011 balance sheet and should have valued it based on the 2008 balance sheet. After calculating the difference this valuation makes in the overall marital estate, we conclude Wife was overawarded $31,751.95. We remand this issue to the family court to determine how the distribution of marital assets shall be modified to reflect this adjustment.

## V. Credit for Occupying Marital Residence

Husband contends the family court abused its discretion in not crediting him with the value of Wife's use and possession of the Bob White property. We disagree.

Prior to the family court's final order, the parties had agreed Husband would pay $700 and Wife would pay $1,400 of the $2,100 monthly mortgage. At the final hearing, the family court determined the parties should pay the mortgage in the ratio of their equitable distribution. The parties agreed Wife would remain in the marital home. She pays the utilities and is responsible for making any improvements or changes recommended by the realtor to assist in selling the property. Additionally, Wife must maintain and make the home available for showings. Husband has substantially more income-generating assets than Wife and will be entitled to a larger equity in the proceeds from the sale of the home based on the 55%/45% distribution. Furthermore, Husband cites no authority to support his argument, rendering anything other than a gener-

al fairness argument abandoned on appeal. *See First Sav. Bank v. McLean,* 314 S.C. 361, 363, 444 S.E.2d 513, 514 (1994) (noting an issue is deemed abandoned when appellant fails to provide arguments or supporting authority for his assertion). We find no error in the family court's ruling and affirm.

### VI. Attorney's and Detective's Fees

Husband asserts the family court abused its discretion in awarding Wife $15,000 in attorney's fees and in denying Husband's request for attorney's and detective's fees. We disagree.

"The decision to award attorney's fees is within the family court's sound discretion, and although appellate review of such an award is de novo, the appellant still has the burden of showing error in the family court's findings of fact." *Lewis v. Lewis,* 400 S.C. 354, 372, 734 S.E.2d 322, 331 (Ct.App. 2012). In deciding whether to award attorney's fees and costs, the court should consider the following factors: (1) the ability of the party to pay the fees; (2) beneficial results obtained; (3) the financial conditions of the parties; and (4) the effect a fee award will have on the party's standard of living. *E.D.M. v. T.A.M.,* 307 S.C. 471, 476–77, 415 S.E.2d 812, 816 (1992).

The family court thoroughly addressed each factor in determining whether to award attorney's fees. The record supports that Husband has the greater ability to pay attorney's fees and absorb that cost into his standard of living. Wife successfully established the Glenn Street properties were marital in nature and prevented Husband from introducing evidence related to her alleged adulterous relationship. On appeal, Husband established the family court erred in valuing Apex Investors. However, this determination does not render the beneficial results between the parties so much in Husband's favor that the decision on attorney's fees should be disturbed. Accordingly, the family court did not abuse its discretion in awarding Wife a portion of her attorney's fees and denying Husband's request.

### CONCLUSION

Based on our review of the record, we affirm the family court's decision to exclude evidence of Wife's alleged adultery

and the determination that all three Glenn Street properties are marital in nature. Furthermore, we affirm the family court's determinations as to the equity in the Garner Lane property, Husband's entitlement to a credit for Wife's occupation of the marital home, and attorney's fees. We modify the family court's ruling as to the value of Husband's business and remand to the family court to modify the distribution of assets to reflect this change.

**AFFIRMED AS MODIFIED AND REMANDED.**

FEW, C.J., and PIEPER, J., concur.