**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Charles Ashley Couch, Appellant,

v.

Rita Ana Del Carmen Patinto Tejada Couch, Respondent.

Appellate Case No. 2017-002031

———————

Appeal From Jasper County
James F. Fraley, Jr., Family Court Judge

———————

Opinion No. 5744
Submitted May 8, 2020 – Filed July 15, 2020

———————

**AFFIRMED IN PART, REVERSED IN PART, AND
REMANDED**

———————

Elizabeth Dalzell, of Columbia, for Appellant.

Pamela Wray Blackshire and Bree R. Kennedy, both of
Kennedy & Blackshire, LLC, of Hilton Head Island, for
Respondent.

———————

**HEWITT, J.:** Charles Couch (Father) appeals a family court order requiring him
to pay roughly $250,000 in fees and costs to his ex-wife Rita Couch's (Mother)
attorneys and to the guardian ad litem (GAL), all within ninety days of the family
court's June 2017 final order. He also appeals the family court's ruling that Mother
may claim the parties' children as dependents on her income tax return. Father
claims that he cannot pay the fees, both parties achieved some beneficial results, he
acted reasonably and should not be penalized with fees, and the family court erred
in finding Mother would derive greater benefit from the tax deduction. We affirm

all issues except the ninety-day requirement, which we reverse and remand with limited instructions.

**FACTS**

This appeal arises from an action Father filed seeking to modify previous family court orders and obtain sole custody of his and Mother's minor daughters, IC and AC. Father and Mother divorced in Florida in 2006.

The parties were able to reach an agreement resolving nearly all issues related to their marriage's dissolution before they divorced. The divorce decree ratified this agreement. The agreement recognized that Father had already moved to Arizona and that Mother planned to relocate to South Carolina. The parties agreed IC and AC would primarily reside with Mother and would have specified periods of visitation with Father.

There has never been a sustained truce. Since the divorce decree, the parties have been in multiple family court disputes and investigations involving the Arizona Department of Child Safety. This started as early as 2007; the year after the divorce. In many, if not all, of these instances, Father's claims have been denied or dismissed as unsubstantiated. Additionally, the family court has modified the divorce decree in Mother's favor, giving Mother more decision-making authority with regard to the children and ordering Father to pay attorney's fees and costs.

The key events giving rise to this particular case happened in April 2015 when the children traveled to Arizona for spring break visitation at Father's home. During that visit, AC showed Father photos of cuts IC made on her upper arm. Father took IC to the emergency room later that day.

Father did not notify Mother that he had taken IC to the emergency room. Mother only discovered IC was in the emergency room when IC sent a message to a friend via one of her social media accounts, which both parents had the ability to monitor. After Father and IC did not answer Mother's phone calls, Mother sent Father emails asking what was going on. Father wrote Mother that IC was in the emergency room and that a social worker would call Mother soon.

According to hospital records, IC had "superficial cuts" on her arms. IC reported she had been cutting for approximately one month and noted it was due to "stress at school with a peer group." Father apparently also told hospital workers that Mother had a history of mental illness and asserted Mother was physically and

emotionally abusive toward the children.  A physician recommended that IC see a therapist and contacted Arizona child safety officers due to the nature of Father's allegations.  The social worker contacted Mother and noted Mother was concerned and asked appropriate questions about IC's condition.  Officers in Arizona attempted to follow up with Father in April 2015; however, no one was at the home and the agency was unable to interview the children.  Arizona closed its file in May 2015, noting the claims of abuse and neglect were "Unsubstantiated."

When the children returned to South Carolina, Mother made appointments for IC to see her pediatrician and a counselor.  Mother chose a counseling group she believed was in Father's health insurance network and both children began seeing therapists.

In June 2015 Father initiated this action with a complaint and motion for an *ex parte* emergency order for sole custody.  This was roughly three months after Father discovered the cutting in Arizona, but shortly after the girls returned to Arizona for their summer visitation.  He alleged a change of circumstances and sought an immediate custody transfer.  Father claimed that Mother was negligent for not being aware of IC's "cutting" behavior, she made the children eat rotten fruit, she made the children go without dinner several nights per week, and she engaged in other abusive conduct.  Father also cited the by-then unsubstantiated allegations he made in Arizona and the fact that Mother had not baptized AC in the Latter-Day Saints Church as grounds for a custody modification.  Father sought a "no-contact order" between Mother and the children until a GAL was appointed, or in the alternative, that Mother only be allowed supervised visitation.

Father later amended his complaint, claiming the counselors the children were seeing were unqualified because they were not licensed.  Mother filed an answer denying Father's allegations and asserted counterclaims.  Both parties moved for attorney's fees and costs.

After the first hearing, the family court denied Father's motion for an *ex parte* emergency order and admonished him for serving Mother with his amended complaint at the "eleventh hour."  At a later hearing, the family court found there was insufficient evidence to support many of Father's claims and denied all relief Father requested with the exception of a custody evaluation, which it set for trial.

Although the case initially proceeded to trial in October 2016, the trial was adjourned due to Hurricane Matthew.  The trial resumed in late November 2016 but on the second day of that trial, Father's trial counsel moved to withdraw citing

health issues, a "breakdown in the attorney/client relationship," and a "severe irreversible conflict of interest" with Father. The family court allowed Father's initial trial counsel to withdraw and granted a continuance to give Father time to hire new counsel. The trial was rescheduled for April 2017.

After a four-day trial in which the family court heard from multiple witnesses and received a substantial amount of evidence, the court found Father failed to meet his burden to prove that there had been a substantial change in circumstances negatively affecting the welfare of the children warranting a change in custody. Specifically, the family court found that although there was some evidence Mother occasionally engaged in unusual methods of discipline, there was no evidence she injured or harmed the children. The family court determined Father failed to offer any credible evidence to support his claim that Mother was mentally or emotionally unstable, was negligent in failing to discover IC's cutting behavior, or was negligent in her choice of counselors. The family court also denied Mother's counterclaims and requests for modifications of the custody agreement.

There does not appear to have been much dispute about the testimony and evidence concerning the parties' financial conditions. Mother's financial declaration stated she made $2,652.36 per month as a teaching assistant (about $31,000 per year), and incurred about $2,400 in expenses per month. Her financial declaration reported roughly $70,000 in total assets, including $6,500 in a checking account, real estate worth approximately $48,000, and about $10,000 in her retirement accounts. The financial declaration also showed Mother owed roughly $177,000 for attorney's fees, guardian fees, and loans from friends and family she took out to pay her attorney's fees. Mother testified she had nearly exhausted her retirement savings and taken out loans from friends and family to pay her attorney's fees.

Mother's legal fees were substantial. According to her affidavits, Mother incurred $252,304 in total legal fees and litigation costs; $192,032.59 from Kennedy & Blackshire, LLC, and $60,271.41 from John O. McDougall.

Father's financial declaration indicated he made $9,341 per month as a civil engineer (about $112,000 per year), and incurred about $9,400 per month in expenses. Father's monthly expenses included $2,308 for mortgage payments, $2,425 in installment payments, $451 for household maintenance, $416 for entertainment, and $1,197 for incidental expenses, which included a 10% tithe to his church and gifts for family and friends.

Father's financial declaration also stated he had roughly $277,000 in total assets, including $3,257 in a checking account, approximately $52,000 in real estate equity, and approximately $197,000 in his pension account. However, according to documents filed with his financial declaration, Father was prohibited from accessing his pension before retirement or taking out a loan against it. Furthermore, Father's financial declaration showed he owed roughly $176,000 for attorneys' fees and had also received loans from his parents to make prior payments. Father also had debt of approximately $90,000 from two different home equity lines of credit and about $43,000 in credit card debt.

Father's fees were roughly $110,000 more than Mother's. According to his affidavits, Father incurred $366,226.74 in total legal fees and litigation costs; $165,722.75 from Ken H. Lester and $200,503.99 from Emma I. Bryson.

Father testified he had been on multiple vacations and ski trips over the course of the litigation, although he disputed that some of those trips occurred during the pendency of the current action. Father acknowledged that the promissory notes to his parents were dated within days of the start of the trial and that his father was "wealthy."

The GAL submitted an extensive report and an invoice of his total fees and costs. The report was based on interviews with at least seventeen individuals familiar with the family. The GAL also reviewed motions, psychological evaluations, other documents filed with the court, and conducted his own investigation. The GAL's total fees and costs were $44,987.87. At the time of the final order Father had paid the GAL $18,443.07 and had a remaining balance of $4,050.87. Mother had paid $6,250.00 and had a remaining balance of $16,243.94.

The family court determined Mother was entitled to an award of attorney's fees.[1] It found that "[a]lthough Father prevailed on some small issues, the results obtained were substantially beneficial to Mother." Additionally, the family court determined Father was in a superior financial position compared to Mother; found that although ordering Father to pay Mother's fees might cause him a hardship it was likely impossible for Mother to pay those fees herself; and found the payment of attorney's fees and costs would have a far greater impact on Mother's standard of living than Father's. The family court noted Father "maintained a comfortable

[1] The family court noted that family court judges involved in the earlier stages of litigation had also found Mother was entitled to an award of attorney's fees and costs at those stages.

lifestyle" throughout the litigation, including taking multiple ski vacations and participating in various other recreational activities. Furthermore, the court noted approximately $60,000 of Father's debt was owed to his parents and that the promissory notes to his parents were dated only days before the start of the final hearing.

The family court then determined the amount of attorney's fees and costs to be awarded. It expressly considered the factors outlined in *Glasscock v. Glasscock*, 304 S.C. 158, 161, 403 S.E.2d 313, 315 (1991). The family court found this was a complex custody case that extended over many months. The court also noted the case was difficult and contentious.

The family court further found that Mother's lawyers enjoyed "excellent professional standing," their rates were reasonable, and the hours expended were necessary to defend the action. The court also noted many hours were expended due to extensive discovery and Father's "uncooperativeness and intent to make this litigation more contentious."

Finally, the court found Mother's legal fees were similar to those of other attorneys in similar litigation, specifically noting her fees were approximately $100,000 less than Father's.

The family court ultimately ordered Father to pay $222,033 towards Mother's fees and costs; $192,033 incurred by Kennedy & Blackshire, LLC, and $30,000 incurred by John O. McDougall.[2] This was a substantial amount of the roughly $250,000 total fees Mother incurred.

The family court also analyzed the GAL's fee pursuant to section 63-3-850(B) of the South Carolina Code (2010). The court found the case was complex and contentious. The court further determined the GAL's time and expenses were reasonable. Based on the parties' financial positions as analyzed in the request for attorney's fees, the court determined Father was responsible for $20,294.81 in outstanding GAL fees. The family court also ordered Father to reimburse Mother for the $6,250 she previously paid the GAL.

The family court ordered Father to pay the full amount of the award within ninety days. Father filed a motion for reconsideration, which the family court denied. This appeal followed.

---

[2] $30,000 represents approximately 50% of McDougall's fees.

**ISSUES ON APPEAL**

1. Did the family court abuse its discretion in ordering Father to pay a significant portion of Mother's attorney's fees and costs, to pay and reimburse Mother for GAL fees and costs, and to pay these fees within ninety days?

2. Did the family court err allowing Mother to claim the children as dependents for tax purposes despite the prior divorce decree allowing this to be determined on a year-to-year basis?

**STANDARD OF REVIEW**

In family court appeals, we review factual and legal issues de novo. *Simmons v. Simmons*, 392 S.C. 412, 414, 709 S.E.2d 666, 667 (2011). We nevertheless recognize the family court is in a superior position to assess witness credibility and the appealing party has the burden of showing the appellate court that the preponderance of the evidence is against the family court's findings. *Stoney v. Stoney*, 422 S.C. 593, 595, 813 S.E.2d 486, 487 (2018).

**ATTORNEY'S FEES AND COSTS**

Father argues the family court erred in ordering him to pay Mother's attorney's fees and costs as well as the GAL costs. Specifically, Father contends he lacks the ability to pay the award of roughly $250,000 because it far exceeds his annual income, he cannot draw from his pension to pay the fees, and he has numerous expenses that would prevent him from being able to pay these fees. Father further argues the family court erred in relying on the fact that his parents are wealthy when determining his ability to pay the fees and costs.

Father also claims he should not have to pay any fees at all because he believes he acted reasonably and that all parties obtained beneficial results. Finally, Father argues requiring him to pay the full amount of the attorney's fees and GAL costs within ninety days—a date long since passed—is excessive and unreasonable.

**A. Award of Attorney's Fees and Costs**

"[A]ttorney's fees may be assessed against a party in an action brought in the family court." *Patel v. Patel*, 359 S.C. 515, 533, 599 S.E.2d 114, 123 (2004). "In

determining whether an attorney's fee should be awarded, the following factors should be considered: (1) the party's ability to pay his/her own attorney's fee; (2) beneficial results obtained by the attorney; (3) the parties' respective financial conditions; (4) effect of the attorney's fee on each party's standard of living." *E.D.M. v. T.A.M.*, 307 S.C. 471, 476-77, 415 S.E.2d 812, 816 (1992).

After determining whether to award fees, the court uses the following factors to assess the amount of reasonable fees: "(1) the nature, extent, and difficulty of the case; (2) the time necessarily devoted to the case; (3) professional standing of counsel; (4) contingency of compensation; (5) beneficial results obtained; (6) customary legal fees for similar services." *Glasscock*, 304 S.C. at 161, 403 S.E.2d at 315. "[O]n appeal, an award for attorney's fees will be affirmed so long as sufficient evidence in the record supports each factor." *Nelson v. Nelson*, 428 S.C. 152, 187, 833 S.E.2d 432, 450 (Ct. App. 2019) (quoting *Jackson v. Speed*, 326 S.C. 289, 308, 486 S.E.2d 750, 760 (1997)).

We find the record supports the family court's award of attorney's fees. The family court considered the *E.D.M.* factors in detail and found that "[a]lthough Father prevailed on some small issues, the results obtained were substantially beneficial to Mother." Additionally, the family court determined Father was in a superior financial position; found that although the payment of attorney's fees might cause Father hardship, the payment for Mother would be impossible; and found the payment of attorney's fees and costs would have a far greater impact on Mother's cost of living than Father's. As outlined below, we agree with each of these determinations.

First, Mother "prevailed" on the merits. Father's core argument to the family court was his accusation that Mother was mentally unstable and harming the parties' children. He lost. The family court found, and the record shows, that although the parties here have substantial difficulties with each other, they are capable parents.

Fairness requires acknowledging Father prevailed on some issues, but we agree with the family court that these issues were minor. For example, Father prevailed by defeating Mother's counter-request to change the custody agreement. Still, we agree with the family court that the ultimate result of the litigation substantially benefitted Mother.

Second, we find that although both parties claimed they lacked the ability to pay their own legal fees, Father had a far greater ability to pay and has a significantly superior financial position to Mother. As we noted before, Mother's financial

declaration stated she made roughly $2,600 per month and incurred about $2,400 in monthly expenses. Additionally, her financial declaration indicated she had roughly $70,000 in total assets, including $6,500 in a checking account, approximately $48,000 in real estate equity, and approximately $10,000 in her retirement accounts. The financial declaration also showed Mother still owed roughly $177,000 for attorney's fees, guardian fees, and loans from friends and family she took out to pay her attorney's fees.

In comparison, Father's financial declaration indicated he made $9,300 per month; roughly three times Mother's monthly income. Father reported having slightly more monthly expenses than his income; however, a small but sizable portion of Father's expenses appear to come from entertainment, gifts, and other incidental expenses. Additionally, Father's financial declaration stated he had roughly $277,000 in total assets, including $3,257 in a checking account and approximately $52,000 in real estate equity. Although Father had approximately $197,000 in his pension account, Father is prohibited from withdrawing from the account before he retires or taking loans out against that pension.

Although Father's financial declaration showed he has roughly $300,000 of debt, we acknowledge, as did the family court, that $66,000 of that debt was to his parents. The promissory notes are dated days before the start of the final hearing. We note that Father's parents are not parties to this case and are not bound to pay the award of fees. However, regardless of whether Father's parents require him to pay back their loan to him, the record demonstrates Father is in a far greater financial position than Mother.

Third, we agree with the family court's decision that although an award of attorney's fees will effect Father's standard of living, requiring Mother to pay her own fees would have a devastating impact on her standard of living. To sum, we believe all factors weigh in favor of awarding Mother attorney's fees; therefore, we believe the record supports the family court's decision. *See Nelson*, 428 S.C. at 187, 833 S.E.2d at 450 ("[O]n appeal, an award for attorney's fees will be affirmed so long as sufficient evidence in the record supports each factor." (quoting *Jackson*, 326 S.C. at 308, 486 S.E.2d at 760)).

### B. Amount of Attorneys' Fees and Costs

The record supports the family court's determination on the amount of fees and costs awarded. This was a difficult, complex, and contentious custody dispute that lasted nearly two years and required extensive discovery. Furthermore, we agree

with the family court's finding that Father's actions in this case, including waiting until the last minute to file and serve documents, filing numerous and sometimes questionable motions, and his general behavior throughout the underlying incident and litigation evince uncooperativeness and an intent to make this litigation more contentious. We agree with the family court that these factors further complicated the case.

We find the time Mother's counsel spent on this case was reasonable and necessary. Mother obviously had to defend the case, respond to motions, and engage in extensive discovery. Had she not responded, she faced the possibility of losing custody of her children. Counsel's fee affidavit indicated Mother's attorneys spent over 1,100 hours on this case and included records breaking down how that time was allocated. Given the fact that Father's counsel spent approximately 1,500 hours on this case, we find the time Mother's counsel spent working on this case can only be viewed as reasonable under the circumstances. We note the family court did not order Father to pay the full amount of Mother's attorney's fees and costs. The family court did not award Mother $30,000 of the attorney's fees and costs she owed attorney John O. McDougall.

There is no basis for questioning, and Father does not question, the family court's finding that "Mother's counsel enjoys an excellent professional standing." This seems amply supported by the qualifications listed in the fee affidavits.

Finally, we agree with the family court that Mother's counsel's compensation would be contingent upon an award of attorney's fees because Mother lacks sufficient financial resources. Mother has already taken loans from numerous friends and nearly depleted her retirement funds to pay for this litigation. We also note—again —the practical necessity that Mother had no choice but to defend against Father's suit, the fact Mother plainly prevailed, and the fact that Father's legal fees vastly outpaced the fees Mother incurred. Mother's total fees were over $110,000 less than Father's. Based on the totality of these factors, we find the record supports an award of attorney's fees and costs of $222,033.

## C. GAL's Fees and Costs

> A guardian appointed by the court is entitled to reasonable compensation, subject to the review and approval of the court. In determining the reasonableness of the fees and costs, the court must take into account:
>
> (1) the complexity of the issues before the court;

(2) the contentiousness of the litigation;

(3) the time expended by the guardian;

(4) the expenses reasonably incurred by the guardian;

(5) the financial ability of each party to pay fees and costs; and

(6) any other factors the court considers necessary.

S.C. Code Ann. § 63-3-850(B) (2010).

We find the GAL fees and costs awarded in this case were reasonable. As previously discussed, this case was complex and contentious, and Father was in a better position to pay fees and costs than Mother. Additionally, the GAL compiled an extensive report after interviewing at least seventeen individuals, reviewing motions and other documents filed with the court, and conducting an additional investigation. We have every reason to believe compiling this report required a considerable amount of time and see no reason to question the necessity of the time and expense given the litigation's difficulty and contentiousness. Accordingly, we find the GAL's fees and costs of $44,987.87 were reasonable and we affirm the family court's decision to order Father to pay the outstanding balance of $20,294.81 and to reimburse Mother for the $6,250 she already paid the GAL.

### D. Ninety Day Payment Period

As stated above, we agree with the family court's decision to award Mother fees and costs and with the amount awarded. Even so, given Father's balance sheet, it is difficult to see how ninety days was a realistic amount of time for Father to assemble approximately $250,000.

Father's income dwarfs Mother's income and Father is plainly in a better position to pay fees. Still, the record shows that many of Father's assets are either encumbered by debt or not available until he retires. The core problem can be summarized in two sentences: here we have a litigant who haled his former spouse into court and who engaged respected lawyers to vigorously represent him, requiring his ex-wife to do likewise. His financial declaration suggests he can hardly afford his own fees, yet he had no problem incurring those fees and there is a years-long pattern of him routinely finding money to fund repeated lawsuits against his ex-wife.

In some ways, we think the family court was in an impossible position. One struggles to identify what realistic options were at the family court's disposal. If the family court had ordered installment payments, for example, those payments would need to be substantial to make any meaningful headway on the amount owed. Yet, Father's financial declaration suggests he could not afford any sort of substantial payment plan.

We cannot simply affirm. We do not wish to prolong this litigation, but given the time that has passed since the family court's June 2017 final order the information in the record is plainly no longer current. We do not know the parties' current financial conditions. We do not know what has been paid, if anything.

If we were able to do so, we would take testimony regarding the parties' current financial positions and develop a meaningful payment plan if a payment plan was necessary to balance Mother's interest in receiving the award of fees and costs with Father's ability to pay those fees. We are not able to do that.

We therefore reverse the requirement that Father pay Mother's fees and costs within ninety days and remand this matter for proceedings consistent with this opinion. *See Miteva v. Robinson*, 418 S.C. 447, 464, 792 S.E.2d 920, 929 (Ct. App. 2016) (modifying an attorney's fee award to produce "a more equitable apportionment"); *id*. ("[W]e emphasize that three of the four *E.D.M.* factors to consider in whether to award attorney's fees *pertain to the financial positions of the parties*." (emphasis added)); *Cf. Brown v. Brown*, 286 S.C. 56, 58, 331 S.E.2d 793, 794 (Ct. App. 1985) (noting that the family court has the power to allow support arrearages to be paid in installments because it would allow a judgment debtor to avoid punishment for contempt). The family court will no doubt consider the parties' current financial circumstances, but the court is also free to consider other information it deems relevant.

## CHILDREN AS DEPENDENTS

Father argues the family court erred in modifying the original divorce decree to allow Mother to claim the children as dependents for tax purposes. Father claims "Given that the financial conditions of both parties are similar with regards to disposable income, and the parties might each benefit from the tax exemption at different times, the court's decision to modify the original divorce decree in this way was unreasonable, punitive, and an abuse of discretion." However, Father did not cite any law supporting his argument. We accordingly find this issue

abandoned. *See Teeter v. Teeter*, 408 S.C. 485, 500, 759 S.E.2d 144, 152 (Ct. App. 2014) (noting an issue is deemed abandoned when appellant fails to provide arguments or supporting authority for his assertion); *see also DiMarco v. DiMarco*, 399 S.C. 295, 731 S.E.2d 617 (Ct. App. 2012).

**CONCLUSION**

Based on the foregoing, we affirm the family court's order requiring Father pay $222,003 in attorney's fees, $20,294.18 for the GAL's outstanding balance, and $6,250 in GAL fees Mother had already paid. We reverse the family court's order requiring these payments be made within ninety days and remand to the family court to establish a payment plan for these amounts. Accordingly, the family court's order is

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**[3]

**LOCKEMY, C.J., and GEATHERS, J., concur.**

---

[3] We decide this case without oral argument pursuant to Rule 215, SCACR.